*503 OPINION
KETHLEDGE, Circuit Judge.
The facts of this case, as we are required to view them on appeal, are that Thomas Germany was killed while riding a motorcycle across an empty field, in the middle of the night, after a low-speed chase, when Deputy Sheriff Danny Davis intentionally rammed the motorcycle that he was riding. The district court held that Davis’s actions, so viewed, violated Germany’s clearly established constitutional rights, thereby precluding qualified immunity for Davis. We affirm.
We take the district court’s view of the facts in the light most favorable to Germany’s Estate. See Hayden v. Green, 640 F.3d 150, 152 (6th Cir.2011). Shortly after midnight in rural Kentucky, a police officer clocked Germany riding his motorcycle at 70 miles per hour in a 55 miles per hour zone. That officer (who is not a defendant here) tried to pull over Germany for speeding, but Germany refused to stop. Deputy Davis then heard about the pursuit over the radio. As Germany approached Davis’s location, Davis blocked the road with his cruiser. Germany maneuvered around him cleanly. Davis then gave chase. The entire pursuit lasted about five minutes and took place on empty stretches of highway. Germany never went above 60 miles per hour during the chase itself. He ran one red light.
Germany eventually turned off the road and cut across a muddy field. Davis followed close behind in his cruiser. According to the Estate’s reconstruction expert— who analyzed, among other things, the location of paint transfers between the two vehicles — Davis then intentionally rammed Germany’s motorcycle. Germany was thrown from the motorcycle and dragged underneath the cruiser, crushing him to death.
Denise Walker brought this 42 U.S.C. § 1983 suit on behalf of Germany’s estate and minor son, claiming that Davis’s use of force against Germany violated the Fourth Amendment. Davis moved for summary judgment on the basis of qualified immunity. The district court denied the motion. This appeal followed.
We review the court’s denial of qualified immunity de novo. Harrison v. Ash, 539 F.3d 510, 516 (6th Cir.2008). Our jurisdiction is limited to the question whether the evidence, considered in the light most favorable to the Estate, shows a violation of a clearly established constitutional right. See id. at 517.
It has been settled law for a generation that, under the Fourth Amendment, “[w]here a suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.” Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Here, Germany posed no immediate threat to anyone as he rode his motorcycle across an empty field in the middle of the night in rural Kentucky. That fact, among others, renders this case patently distinguishable from Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), in which Harris had led the police on a “Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury.” Id. at 380, 127 S.Ct. 1769. The chase here was a sleeper by comparison.
Nor does it matter that, at the time of Davis’s actions, there were few, if any, reported cases in which police cruisers intentionally rammed motorcycles. It is only common sense — and obviously so— that intentionally ramming a motorcycle with a police cruiser involves the applica *504 tion of potentially deadly force. This case is thus governed by the rule that “general statements of the law are capable of giving clear and fair warning to officers even where the very action in question has not previously been held unlawful.” Smith v. Cupp, 430 F.3d 766, 776-77 (6th Cir.2005) (internal marks omitted).
Whether, in fact, the collision here was intentional is for a jury to decide. Davis insists it was not. But the facts, as we must view them, make out a violation of Germany’s clearly established constitutional rights. The district court’s denial of qualified immunity is affirmed.