NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0537n.06

No. 15-1601

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 16, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARY STAMM, Personal Representative of the Estate of Carl A. Stamm, IV, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE |
| FREDERICK MILLER, | ) ) ) | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendant-Appellant, | ) ) | |
| and | ) ) | |
| VILLAGE OF FOWLERVILLE, | ) ) | |
| Defendant. | ) | |

BEFORE:    SILER, GIBBONS, and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**    Frederick Miller, an officer with the Fowlerville Police Department, challenges the district court's denial of his motion for summary judgment on the ground of qualified immunity. Mary Stamm brought this 28 U.S.C. § 1983 action on behalf of the estate of her son, Carl Stamm, who died after his motorcycle crashed into Miller's vehicle during a high-speed chase with police. The district court's decision to deny Miller qualified immunity relied on material disputed facts with respect to (1) whether Miller intended to block Stamm's motorcycle with his car when their vehicles collided or was attempting to get out of Stamm's way, and (2) whether Stamm posed an immediate threat to others. Because Miller's actions, viewed in the light most favorable to Mrs. Stamm, indicate a

violation of Stamm's clearly established Fourth Amendment rights, and material facts are in

dispute, we affirm the district court's denial of summary judgment.

**I.**

We adopt the district court's view of the facts in the light most favorable to Mrs. Stamm,

*Walker v. Davis*, 649 F.3d 502, 503 (6th Cir. 2011), and the district court described the events in

question as follows:

> On May 16, 2011, after spending an evening with his grandparents, Carl Stamm went to his friend Erik King's house in Brighton, Michigan. While at this house, Stamm was served alcohol and became intoxicated[, with his blood alcohol level after the accident determined to be .10]. He left King's house at around four in the morning on his motorcycle heading to his home in East Lansing. (Dkt. 16-2.) These facts are not in dispute.
>
> At about 4:20 a.m., on Interstate 96, near the Mason Road overpass in Livingston County, [Michigan] Livingston County Sheriff's Deputy Ray Marino recorded Stamm riding his motorcycle at 104 miles per hour. The speed limit along that stretch of road, which is a three-lane highway, is 70 miles per hour. Deputy Marino activated his overhead lights, but instead of slowing down, Stamm increased his speed. Deputy Marino notified his central dispatch that he was in pursuit of a vehicle that was not stopping. Central dispatch informed Ingham County law enforcement of the chase because the county line was just a few miles ahead of where Deputy Marino was on the highway.
>
> The parties provided a video of the subsequent pursuit[, and the times used below reflect the times as they appear in Deputy Marino's video]. Video taken from Deputy Marino's vehicle shows Stamm maneuvering around several cars and trucks on the highway. About ten seconds into the chase, the highway changes from a six-lane to a four-lane highway. (Dkt. 16-5 at 14:18:37.) At one point during the chase, Deputy Marino was travelling 124 miles per hour, but Stamm was still able to accelerate away from the patrol car. (*See id.*)
>
> After central dispatch contacted Ingham County, audio records reveal that Officer Miller, of the Fowlerville Police Department [], responded that he was traveling down a ramp to the highway ahead of the pursuit. (Dkt. 16-8.) Deputy Marino testified that because Stamm was only being pursued for speeding, once he reached the Ingham County line, he would have terminated the pursuit. (Dkt. 18-10 at 14.) On the audio recording, Deputy Marino instructed Officer Miller to "jump on now, get in the right lane, and turn on your overheads." Officer Miller responded that he was "going to try and stay in front of him." (Dkt. 16-8 at 00:30-00:44).
>
> Officer Miller's in-car camera switches on at approximately 4:20:14 a.m. Officer Miller turned his sirens and emergency lights on and travelled on the highway in the right lane at about 36 miles per hour. By 4:20:20, his vehicle

reached a peak speed of 43 miles per hour and then began to slow down. At this point, video from Deputy Marino's car confirms that Stamm's motorcycle was also in the right lane and remained there for the next several seconds. At 4:20:24, Officer Miller's car began to move into the left lane just as Stamm began to occupy the left lane. For about the next five seconds, Officer Miller's vehicle straddled the line dividing the two lanes. About half way over into the left lane, at 4:20:30, Officer Miller pressed the brakes, and his vehicle shifted back to the right, at which point Stamm's motorcycle crashed into the back left side of the car. The video from Officer Miller's vehicle shows that he applied his brakes several times in the sixteen seconds he was involved in this incident. (Dkt. 16-6).

The moment of impact cannot be seen from Deputy Marino's video. At approximately 4:20:23, Officer Miller's vehicle's lights appeared ahead. As Deputy Marino approached, he slowed down rapidly, coming to a stop behind skid marks and Stamm's motorcycle on the side of the road.

Upon impact, Stamm was thrown from his motorcycle. His head struck the [metal portion of the patrol car between the rear windshield and the back-seat window] and he fell to the pavement eventually sliding on to the median on the left side of the highway. At the scene of the accident, Stamm appeared to be unconscious and barely breathing. He was declared dead shortly thereafter.

*Stamm v. Miller*, No. 5:14-cv-11951-JEL-MJH, at *2–*6 (E.D. Mich. Apr. 27, 2015).

Considering the parties' cross-motions for summary judgment, the district court denied Mrs. Stamm's motion and denied in part and granted in part the defendants' motion. The district court found an issue of material fact as to whether there was a constitutional violation because "[a] reasonable juror could conclude that Officer Miller . . . intended to stop plaintiff by use of physical force intentionally causing the collision" and that this use of "deadly force was not necessary under the circumstances." *Id.* at 18–19, 24. Regarding whether Miller's conduct violated a clearly established right of Stamm's, the court concluded that "[i]t has been clearly established that the use of deadly force in a high speed pursuit is unconstitutional where failing to use such force poses little threat to the safety of others." *Id.* at 27.

## II.

We review a district court's denial of a motion for summary judgment on qualified immunity grounds *de novo*. *Stoudemire v. Mich. Dep't. of Corr.*, 705 F.3d 560, 565 (6th Cir.

2013). A court properly grants summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Qualified immunity protects government officials from standing trial for civil liability in their performance of discretionary functions unless their actions violate clearly established rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an officer is entitled to qualified immunity, we apply a two-prong test, asking (1) whether the facts, as alleged by the plaintiff, "make out a violation of a constitutional right," and (2) whether "the right at issue was clearly established at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation marks and citation omitted). If a district court determines that the plaintiff's evidence would reasonably support a jury's finding that the defendant violated a clearly established right, it must deny summary judgment. *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015). Here, considering the facts in the light most favorable to Mrs. Stamm, the district court correctly denied Miller summary judgment.

## A.

"The Fourth Amendment's prohibition against unreasonable seizures protects citizens from excessive use of force by law enforcement officers." *Godawa v. Byrd*, 798 F.3d 457, 463 (6th Cir. 2015). Claims alleging excessive force are subject to the Fourth Amendment's "objective reasonableness" standard. *Id.* at 464 (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). This standard requires a court to balance three factors: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

(quoting *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013)). For a seizure under the Fourth Amendment to occur at all, an officer must intend to stop someone. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998).

The district court correctly determined that there were disputes of material fact regarding whether Miller intended to block Stamm and whether Stamm's conduct posed an immediate threat to others. These disputes concern the reasonableness of Miller's conduct, making them material, and because the evidence is such that a jury could return a verdict in Mrs. Stamm's favor, this material dispute is genuine. *See Stoudemire*, 705 F.3d at 565.

Regarding his intent to block Stamm, Miller argues that he attempted to move out of Stamm's way before the collision. As the district court found, however, the video reasonably supports Mrs. Stamm's version of the facts. The video shows that Miller's police vehicle was traveling, at most, 43 miles per hour on a highway with a 70-mile-per-hour speed limit, when Miller knew Stamm's motorcycle was traveling at a speed of more than 100 miles per hour. The video also demonstrates that Miller's vehicle straddled the dividing line between the two lanes for about five seconds. Finally, the video shows that Miller got in front of Stamm while Stamm was changing lanes and braked several times while in front of Stamm. The recording of the radio communication between Miller and Marino, the deputy who originally responded, also indicates that Miller's plan was to stay in front of Stamm.

In terms of Stamm's potential danger to others, Miller argues that Stamm's high rate of speed and reckless driving threatened officers and other motorists. The record, however, supports Mrs. Stamm's version of the facts regarding the threat Stamm posed when his motorcycle and Miller's police vehicle collided. As the district court reasoned, "Stamm was being pursued at 4:20 a.m. along a highway six and then four lanes wide, with a large median

dividing him from oncoming traffic and no pedestrians or businesses in sight." *Stamm*, No. 5:14-cv-11951-JEL-MJH, at *22. The district court further observed that "while the motorcycle passed other vehicles while Deputy Marino was pursuing him, at the time and place of the collision with Officer Miller, there are no vehicles to be seen in the immediate vicinity." *Id.* at *23–*24.

The district court correctly found that the record raised genuine issues of material fact as to whether Miller intended to block Stamm and whether Stamm was a threat to others at the time of the collision, inquiries which help determine whether Miller's conduct was reasonable under the Fourth Amendment. A reasonable juror could conclude that Miller deliberately used deadly force against Stamm when he posed no immediate threat to others, and summary judgment to Miller was therefore inappropriate.

**B.**

In evaluating whether a constitutional right was clearly established, "[t]he key determination is whether a defendant moving for summary judgment on qualified immunity grounds was on notice that his alleged actions were unconstitutional." *Grawey v. Drury*, 567 F.3d 302, 313 (6th Cir. 2009). The Supreme Court has emphasized that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This does not mean that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1985)). Rather, it means that "in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640 (collecting cases); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or

constitutional question beyond debate."). The "clearly established" prong must be applied "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson*, 555 U.S. at 236.

We have held that "[i]t has been settled law for a generation that, under the Fourth Amendment, '[w]here a suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.'" *Walker*, 649 F.3d at 503 (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). Though *Walker* was decided after the events giving rise to this case, its principle was not new, as we explicitly noted. In that case, which involved a collision similar to the one here, we noted that "[i]t is only common sense—and obviously so—that intentionally ramming a motorcycle with a police cruiser involves the application of potentially deadly force." *Id.* at 503–04. Thus, it is clearly established law that an officer may not use his police vehicle to intentionally hit a motorcycle unless the suspect on the motorcycle poses a threat to the officer or others.

The evidence, construed in the light most favorable to Mrs. Stamm, indicates a violation of a clearly established constitutional right. Under Mrs. Stamm's version of the facts, Miller intended to block Stamm's passage with his police cruiser, causing the deadly collision. As the district court observed, the risk to others at the time of Miller's use of force was minimal, as there were no other vehicles in sight, and Stamm's motorcycle posed little threat to Miller, who was inside a much-larger vehicle.

Because the facts as interpreted in the light most favorable to Mrs. Stamm indicate a violation of a clearly established constitutional right, and material facts are in dispute, the district court properly denied summary judgment to Miller.

**IV.**

Although Miller's appeal fails, we decline to impose sanctions because the appeal was not entirely frivolous. *See* Fed. R. App. P. 38. Miller's appeal does not concede Mrs. Stamm's version of the facts with regard to Miller's intent or the threat Stamm posed to others when he struck Miller's car. Nonetheless, Miller did raise, albeit inartfully, a non-frivolous issue: whether, considering the facts in the light most favorable to Mrs. Stamm, Miller's conduct "violate[d] clearly established . . . rights of which a reasonable person would have known." *Barker v. Goodrich*, 649 F.3d 428, 433 (2011) (quoting *Harlow*, 457 U.S. at 818).

**V.**

We affirm the district court's denial of qualified immunity and deny Mrs. Stamm's request for sanctions.