ANDREW S. OLDHAM, Circuit Judge:
Austin Moon was a young motorcyclist. He liked to ride fast. So fast, in fact, he twice eluded police officers at triple-digit speeds. On officers' third attempt to stop Moon, a Criminal District Attorney Investigator named Jonathan Meachum caused Moon to crash. Moon died. The question presented is whether Meachum is entitled to qualified immunity. The district court held yes. We affirm.
I.
A.
On June 26, 2014, Meachum was patrolling I-20 near the town of Cisco, Texas. He *873 was driving a marked police SUV. At around 5:30 p.m., Meachum observed motorcyclist Moon speeding at 85 mph and weaving through traffic. Meachum turned on his lights to stop the motorcycle. Moon sped away. Meachum radioed for help.
Having shaken the police SUV from his tail, Moon exited I-20. He stopped at a gas station and hid behind a gas pump. Eastland County Deputy Sheriff Ben Yarbrough drove by the gas station and spotted Moon. Moon likewise spotted Yarbrough. So Moon again sped away-this time performing a "wheelie." Yarbrough turned on his lights and gave chase. Moon again escaped. Yarbrough radioed that Moon was now headed south on US-183.
Meanwhile, Investigator Meachum had also exited I-20 onto southbound US-183. But given Moon's pit stop, Meachum was now in front of him. The relevant stretch of US-183 is a two-lane undivided road with rolling hills. Videos in the record show light but consistent traffic going both directions. Videos also show Meachum was driving approximately 100 mph; motorcyclist Moon was clocked at 150 mph and closing quickly behind Meachum.[1] As Meachum reached the top of a gentle hill, he spotted two vehicles in the oncoming (northbound) lane of US-183. Meachum also spotted Moon approaching from behind.
Thus began the fateful seven seconds at the heart of this case. According to the dashboard camera ("dashcam") on Meachum's police SUV and Moon's expert report, the officer was going approximately 100 mph when he spotted Moon approaching from behind. The dashcam at that moment is timestamped 17:46 and 41 seconds. At 42.3 seconds, Meachum slowed to 93 mph and moved to the right side of his lane. At 43.0 seconds, Meachum slowed to 87 mph. At 44.7 seconds, Meachum slowed to 71 mph. Then, over the next 2.3 seconds-from 44.7 to 47.0-Meachum slowed to 56 mph and moved his SUV leftward and over the center line of US-183. At 47.7 seconds, Moon crashed into the back of Meachum's SUV. The dashcam shows Meachum was traveling 51 mph at impact.[2] Moon died. He was 22.
B.
Moon's survivors and estate sued Meachum under 42 U.S.C. § 1983 for seizing Moon in violation of the Fourth Amendment. They argued Meachum intentionally positioned his SUV to surprise Moon, to prevent him from eluding arrest a third time, and under the circumstances, to kill him.
Meachum described his actions as a "rolling block." Meachum testified he performed a rolling block because he wanted to (1) discourage Moon from passing in the oncoming traffic lane and (2) warn the oncoming traffic of the pursuit. Videos corroborated Meachum's testimony there was northbound traffic on the highway. The *874 only dispute was whether that traffic was in the northbound lane or on the shoulder. Either way, a witness stated Moon's motorcycle was already in the northbound lane when Meachum crossed the center line.
The district court held Meachum was entitled to qualified immunity and entered summary judgment. It held "the law is clear that '[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death.' " Morrow v. Meachum , No. 1:16-cv-118, 2017 WL 4124285, at *4 (N.D. Tex. Sept. 18, 2017) (quoting Scott v. Harris , 550 U.S. 372, 386, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) ). Moon's estate and survivors appealed.[3]
II.
Our review is de novo . Vann v. City of Southaven , 884 F.3d 307, 309 (5th Cir. 2018) (per curiam). We view the facts in the light most favorable to Appellants and draw all reasonable inferences in their favor. See ibid. Even so, they cannot show Meachum violated clearly established law.
A.
Appellants seek money damages from the personal pocket of a law-enforcement officer. The qualified-immunity doctrine makes that task difficult in every case. In this case, it's impossible.
1.
Qualified immunity includes two inquiries. The first question is whether the officer violated a constitutional right. The second question is whether the "right at issue was 'clearly established' at the time of [the] alleged misconduct." Pearson v. Callahan , 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). We can decide one question or both. See id. at 236, 129 S.Ct. 808.
The second question-whether the officer violated clearly established law-is a doozy. The § 1983 plaintiff bears the burden of proof. See Vann , 884 F.3d at 309. And the burden is heavy: A right is clearly established only if relevant precedent "ha[s] placed the ... constitutional question beyond debate." Ashcroft v. al-Kidd , 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). The pages of the United States Reports teem with warnings about the difficulty of placing a question beyond debate. From them, we can distill four applicable commandments.[4]
First, we must frame the constitutional question with specificity and *875 granularity. For example, it is obviously beyond debate the Fourth Amendment prohibits certain "unreasonable ... seizures." U.S. CONST. amend. IV. "Yet that is not enough." Saucier v. Katz , 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The Supreme Court has "repeatedly told courts ... not to define clearly established law at [that] high level of generality." al-Kidd , 563 U.S. at 742, 131 S.Ct. 2074 ; see also City of Escondido, Cal. v. Emmons , --- U.S. ----, 139 S.Ct. 500, 503-04, 202 L.Ed.2d 455 (2019) (per curiam). Rather, "[t]he dispositive question is whether the violative nature of particular conduct is clearly established." Mullenix v. Luna , --- U.S. ----, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (quotation omitted); see also Bush v. Strain , 513 F.3d 492, 502 (5th Cir. 2008). That is because qualified immunity is inappropriate only where the officer had "fair notice"-"in light of the specific context of the case, not as a broad general proposition"-that his particular conduct was unlawful. Brosseau v. Haugen , 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam) (quotation omitted); accord City & Cty. of San Francisco v. Sheehan , --- U.S. ----, 135 S.Ct. 1765, 1776, 191 L.Ed.2d 856 (2015) ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures."); Wilson v. Layne , 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (similar); Anderson v. Creighton , 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (similar).[5]
Second, clearly established law comes from holdings, not dicta. Sorenson v. Ferrie , 134 F.3d 325, 329 n.7 (5th Cir. 1998) ("The court's language ... is dictum that hardly constitutes clearly established law."); see also Leiser v. Moore , 903 F.3d 1137, 1145 (10th Cir. 2018) (concluding Supreme Court precedent did not clearly establish the law because it "express[ed] only dicta"); Hamilton ex rel. Hamilton v. Cannon , 80 F.3d 1525, 1530 (11th Cir. 1996) ("The law cannot be established by dicta. Dicta is particularly unhelpful in qualified immunity cases where we seek to identify clearly established law."); cf. Woods v. Donald , --- U.S. ----, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (" '[C]learly established Federal law' for purposes of [ 28 U.S.C.] § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions."); al-Kidd , 563 U.S. at 741-42, 131 S.Ct. 2074 (holding a district court's "footnoted dictum" did not clearly establish the law for purposes of qualified immunity). Dictum is not law, and hence cannot be clearly established law. See BRYAN A. GARNER, ET AL., THE LAW OF JUDICIAL PRECEDENT 44 (2016) (explaining dictum does not "bind future courts" and is "not law per se").[6] And while officers are *876 charged with knowing the results of our cases-at least when they are so numerous and pellucid as to put the relevant question "beyond debate," al-Kidd , 563 U.S. at 741, 131 S.Ct. 2074 -officers are not charged with memorizing every jot and tittle we write to explain them.
Third, overcoming qualified immunity is especially difficult in excessive-force cases. This "is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." Kisela v. Hughes , --- U.S. ----, 138 S.Ct. 1148, 1153, 200 L.Ed.2d 449 (2018) (per curiam) (quoting Mullenix , 136 S.Ct. at 309 ). And as this case illustrates, excessive-force claims often turn on "split-second decisions" to use lethal force. Pasco ex rel. Pasco v. Knoblauch , 566 F.3d 572, 582 (5th Cir. 2009). That means the law must be so clearly established that-in the blink of an eye, in the middle of a high-speed chase-every reasonable officer would know it immediately. See index="50" url="https://cite.case.law/f3d/566/572/#p582">ibid.
The fourth and final commandment is we must think twice before denying qualified immunity. The Supreme Court reserves "the extraordinary remedy of a summary reversal" for decisions that are "manifestly incorrect." Kisela , 138 S.Ct. at 1162 (Sotomayor, J., dissenting) (quotation omitted). Yet it routinely wields this remedy against denials of qualified immunity. See Emmons , 139 S.Ct. at 503-04 (summarily reversing the Ninth Circuit); Kisela , 138 S.Ct. at 1153 (majority op.) (summarily reversing the Ninth Circuit); White v. Pauly , --- U.S. ----, 137 S.Ct. 548, 553, 196 L.Ed.2d 463 (2017) (per curiam) (summarily reversing the Tenth Circuit); Mullenix , 136 S.Ct. at 312 (summarily reversing our Court); Stanton v. Sims , 571 U.S. 3, 5, 134 S.Ct. 3, 187 L.Ed.2d 341 (2013) (per curiam) (summarily reversing the Ninth Circuit). "Because of the importance of qualified immunity to society as a whole, the [Supreme] Court often corrects lower courts when they wrongly subject individual officers to liability." Sheehan , 135 S.Ct. at 1774 n.3 (quotation and citation omitted); accord Carroll v. Carman , --- U.S. ----, 135 S.Ct. 348, 190 L.Ed.2d 311 (2014) (per curiam); Wood v. Moss , 572 U.S. 744, 764, 134 S.Ct. 2056, 188 L.Ed.2d 1039 (2014) ; Plumhoff v. Rickard , 572 U.S. 765, 778, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014) ; Reichle v. Howards , 566 U.S. 658, 663, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) ; Wesby v. District of Columbia , 816 F.3d 96, 102 (D.C. Cir. 2016) (Kavanaugh, J., dissenting from the denial of rehearing en banc) ("Indeed, in just the past five years, the Supreme Court has issued 11 decisions reversing federal courts of appeals in qualified immunity cases, including five strongly worded summary reversals."), rev'd , --- U.S. ----, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018). We'd be ill advised to misunderstand the message and deny qualified immunity to anyone "but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs , 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
2.
Appellants are seeking an extraordinary remedy. To get it, they must make an extraordinary showing. They have fallen far short. They have not identified a controlling precedent that " 'squarely governs' the specific facts at issue." Kisela , 138 S.Ct. at 1153. Nor have they identified a controlling precedent rendering it "beyond debate"-such that any reasonable officer would know, even in only seven seconds, and even in the midst of a high-speed *877 chase-that Meachum's rolling block violated the Fourth Amendment. See al-Kidd , 563 U.S. at 741, 131 S.Ct. 2074.
To the extent we can identify clearly established law in excessive-force cases, it supports Meachum, not Moon. In at least three recent cases, the Supreme Court has decided whether officers are entitled to qualified immunity for using deadly force to end high-speed chases. In all three cases, the Court said yes. In Plumhoff , the Court held officers were entitled to qualified immunity after firing 15 shots that killed two men who fled a traffic stop at speeds over 100 mph. 572 U.S. at 769-70, 779-80, 134 S.Ct. 2012. In Mullenix , the Court held an officer was entitled to qualified immunity after firing six shots and killing a man who evaded arrest at speeds between 85 and 110 mph. 136 S.Ct. at 306-07, 312. And in Scott , the Court held an officer was entitled to qualified immunity after ending an 85-mph chase by ramming the suspect's car off the road and paralyzing him. 550 U.S. at 375, 386, 127 S.Ct. 1769. Indeed, in Scott , the Court held there was no constitutional violation at all. Id. at 386, 127 S.Ct. 1769.
Appellants argue these cases are distinguishable in various ways. True. All that matters here, however, is that three cases affording qualified immunity to officers who used deadly force to end police chases do nothing to foreclose using deadly force to end police chases. See Mullenix , 136 S.Ct. at 312.
B.
For their part, Appellants attempt to identify clearly established law in three lines of cases. Individually and collectively, they are insufficient.
1.
Appellants first point to Brower v. County of Inyo , 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). In Brower , the Court held a seizure occurred when the police:
(1) caused an 18-wheel tractor-trailer to be placed across both lanes of a two-lane highway in the path of Brower's flight, (2) "effectively concealed" this roadblock by placing it behind a curve and leaving it unilluminated, and (3) positioned a police car, with its headlights on, between Brower's oncoming vehicle and the truck, so that Brower would be "blinded" on his approach.
Id. at 594, 109 S.Ct. 1378. Appellants interpret Brower to hold a "deliberately deadly" roadblock that is "likely to kill [the fleeing suspect]" is per se unreasonable and hence unconstitutional.[7]
Brower held no such thing. "The only question in Brower was whether a police roadblock constituted a seizure under the Fourth Amendment." Scott , 550 U.S. at 384 n.10, 127 S.Ct. 1769 ; see also Brief for Petitioner at i, Brower v. County of Inyo , 489 U.S. 593 (1989) (No. 87-248) (setting out the question presented: "Whether the apprehension of decedent by means of a *878 high speed chase and a 'deadman' roadblock constitutes a seizure within the meaning of the Fourth Amendment."). The Court said nothing about whether the officers could be held personally liable. It said nothing about qualified immunity. And it said nothing about whether the officers had "fair notice" their conduct was unreasonable. Nor did the Court say anything about the reasonableness of the seizure. In fact, it remanded for consideration of whether the roadblock was reasonable. See 489 U.S. at 599-600, 109 S.Ct. 1378. Brower therefore did nothing to clearly establish a prohibition on "deadman roadblocks." And it did not put Meachum on "fair notice" of the reasonableness of anything.
Appellants fall back to Tennessee v. Garner , 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In Garner , a young man attempted to run from police after stealing a purse and $10. Garner attempted to climb a fence. To stop the purse-snatcher, an officer fatally shot him in the back of the head. From Garner , Appellants divine a clearly established prohibition on the use of deadly force "where the suspect poses no immediate threat to the officer and no threat to others." There are at least three problems with that argument. First, the Supreme Court already rejected it. See Scott , 550 U.S. at 382, 127 S.Ct. 1769 (" Garner did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.' ").
Second, the Supreme Court has warned us against extending Garner . In fact, that's the one mistake common to the Supreme Court's recent reversals in excessive-force cases. See Mullenix , 136 S.Ct. at 308-09 (discussing our Court's erroneous extension of Garner ); Scott , 550 U.S. at 381-83, 127 S.Ct. 1769 ; Allen v. West Memphis , 509 F. App'x 388, 392 (6th Cir. 2012) (extending Garner ), rev'd by Plumhoff , 572 U.S. 765, 134 S.Ct. 2012. We won't repeat that mistake.
Third, and in all events, Garner is easily distinguishable. A motorcyclist eluding arrest twice and leading police on a chase at well over 100 mph poses an obvious threat to the pursuing officers and the public. The videos in this case show many other motorists on the road. Moon's "reckless, high-speed flight" therefore endangered the public and officers in ways Garner's fence-hopping never did. Scott , 550 U.S. at 384, 127 S.Ct. 1769. That's precisely why the Supreme Court "has ... never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity." Mullenix , 136 S.Ct. at 310. And it's why we previously refused to extend Garner to high-speed chases. See Pasco , 566 F.3d at 580 ("[I]t would be unreasonable to expect a police officer to make the numerous legal conclusions necessary to apply Garner to a high-speed car chase."). We refuse again today.[8]
2.
Next, Appellants point to Lytle v. Bexar County , 560 F.3d 404 (5th Cir. 2009). In Lytle , a police officer shot at a fleeing vehicle and killed a fifteen-year-old passenger in the back seat. Id . at 407-08. We held "a jury could conclude [a fleeing car] posed some threat of harm" because "the *879 chase took place at high speeds within a residential area, there were children playing somewhere nearby, and the [car] had collided with another vehicle." Id. at 416. The Court remanded for trial, however, because it did "not agree with [the officer] that the [car] was so menacing under [the plaintiff's] version of the facts that any use of force in an attempt to stop it would be objectively reasonable as a matter of law." Ibid. (emphasis added).
Even if Lytle survives Mullenix , Plumhoff , and the Supreme Court's other recent applications of the qualified-immunity doctrine, cases involving gunshots are too factually dissimilar to put the relevant question "beyond debate." al-Kidd , 563 U.S. at 741, 131 S.Ct. 2074. "It does not assist analysis to refer to all use of force that happens to kill the arrestee as the application of deadly force." Mullenix , 136 S.Ct. at 312 (Scalia, J., concurring in the judgment); see also Scott , 550 U.S. at 382, 127 S.Ct. 1769. "A police car's bumping a fleeing [vehicle] is, in fact, not much like a policeman's shooting a gun...." Scott , 550 U.S. at 383, 127 S.Ct. 1769 (quoting Adams v. St. Lucie Cty. Sheriff's Dep't , 962 F.2d 1563, 1577 (11th Cir. 1992) (Edmondson, J., dissenting)). Therefore, gunshot cases do not " 'squarely govern[ ]' the facts" of a case involving a collision between a police vehicle and a suspect's vehicle. Mullenix , 136 S.Ct. at 310.[9]
Even if gunshot cases were relevant, the law is at best ambiguous. Sure, there's Lytle . On the other hand, Mullenix , Plumhoff , Vann , Pasco , and Thompson v. Mercer , 762 F.3d 433, 440-41 (5th Cir. 2014), all involved gunshots that ended high-speed chases. And qualified immunity applied in all five. Cases cutting both ways do not clearly establish the law.
3.
Finally, Appellants argue it is unconstitutional for officers to perform a rolling block where a fleeing motorcyclist "posed no immediate danger to anyone." Because there is no binding precedent saying so, they rely on a purported "consensus of persuasive cases from other jurisdictions." Breen v. Tex. A&M Univ. , 485 F.3d 325, 339 (5th Cir.), modified on reh'g , 494 F.3d 516 (5th Cir. 2007) (per curiam).
We have not previously identified the level of out-of-circuit consensus necessary to put the relevant question "beyond debate." al-Kidd , 563 U.S. at 741, 131 S.Ct. 2074. But we know the consensus must be "robust." District of Columbia v. Wesby , --- U.S. ----, 138 S.Ct. 577, 589, 199 L.Ed.2d 453 (2018) (quoting al-Kidd , 563 U.S. at 741-42, 131 S.Ct. 2074 ). And in McClendon v. City of Columbia , 305 F.3d 314, 330 (5th Cir. 2002) (en banc), we held recognition of the state-created-danger doctrine in six circuits was insufficient to create a robust consensus. We reasoned that, despite widespread acceptance of the doctrine, the circuits were not unanimous in its "contours" or its application "to a *880 factual context similar to that of the instant case." Id. at 331-32.
Appellants fall far short of establishing an out-of-circuit consensus, let alone a robust one. It is true the Sixth Circuit has denied qualified immunity in two motorcycle-chase cases. See Stamm v. Miller , 657 F. App'x 492, 495 (6th Cir. 2016) ; Walker v. Davis , 649 F.3d 502, 503 (6th Cir. 2011) ; cf. Hawkins v. City of Farmington , 189 F.3d 695, 702-03 (8th Cir. 1999) (remanding for consideration of whether a "partial roadblock with means of escape" was unreasonable). But for three separate reasons, those cases are irrelevant here.
First, Stamm is irrelevant because it was decided after Meachum's chase. See Anderson , 483 U.S. at 639, 107 S.Ct. 3034 (qualified immunity turns on "the legal rules that were 'clearly established' at the time [the official action] was taken"); Pierson , 386 U.S. at 557, 87 S.Ct. 1213.
Second, and more generally, the Sixth Circuit's approach is infected by the same disease the Supreme Court cured in Mullenix . The Sixth Circuit held Garner makes it "clearly established law that an officer may not use his police vehicle to intentionally hit a motorcycle unless the suspect on the motorcycle poses a threat to the officer or others." Stamm , 657 F. App'x at 496 ; see also Walker , 649 F.3d at 503 (similar). Of course, Garner held no such thing. Garner involved guns (not police vehicles), and Garner involved a $10-thief hopping a fence (not a motorcyclist escaping at triple-digit speed). The only way to use Garner for clearly establishing the law in vehicle chases is to identify the constitutional issue from a bird's eye view-an approach the Supreme Court has rejected time and again. See, e.g. , Mullenix , 136 S.Ct. at 309 (rejecting the "use of Garner's 'general' test for excessive force" to identify clearly established law); see also supra at 874-75 (collecting cases).
Finally, the Sixth Circuit does not represent a consensus. The Fourth Circuit concluded an officer acted reasonably in hitting a fleeing motorcyclist with his vehicle to end a high-speed chase. Abney v. Coe , 493 F.3d 412, 415-18 (4th Cir. 2007). Under Appellants' view, Meachum should be forced to decide-with life-or-death consequences for innocent motorists, in less than seven seconds, and upon pain of personal liability-whether his chase is more like Abney and Mullenix , or more like a slow-moving motorcycle pursuit "across an empty field in the middle of the night in rural Kentucky," Walker , 649 F.3d at 503. Section 1983 does not put Meachum to that choice. Nor do we.
* * *
The judgment of the district court is AFFIRMED.

There is some dispute about Moon's speed after he was clocked by the radar gun. The Texas Department of Public Safety estimated Moon was traveling southbound on US-183 at approximately 170 mph in the seconds before the crash. Moon's expert estimated the motorcycle's speed at impact was between 100 and 110 mph. This dispute is immaterial to our resolution of the case.

The times and speeds in this paragraph come from a frame-by-frame reading of Meachum's dashcam, but they may not be precisely accurate. Moon's expert report posits the speeds displayed on dashcam videos are "substantially delayed" because they are based on GPS data that lags the real-time movement of the police vehicle. Moon's expert argues once that delay is considered, the actual speed of Meachum's SUV at impact was 45 mph not 51 mph. That dispute is immaterial to our resolution of this appeal. We reproduce the dashcam readings only because they illustrate textually what the video depicts visually: the general speed and position of Meachum's vehicle over the course of those seven seconds.

Appellants also sued Eastland County, and the district court also granted summary judgment on those claims. Appellants do not challenge that ruling here.

As Justice Thomas has explained, the qualified-immunity doctrine originated in common-law defenses to torts committed by executive officers. See Ziglar v. Abbasi , --- U.S. ----, 137 S.Ct. 1843, 1870-71, 198 L.Ed.2d 290 (2017) (Thomas, J., concurring in part and concurring in the judgment) (citing Pierson v. Ray , 386 U.S. 547, 555-57, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ). Some-including Justice Thomas-have queried whether the Supreme Court's post-Pierson qualified-immunity cases are "consistent with the common-law rules prevailing [when § 1983 was enacted] in 1871." Id. at 1872 ; compare William Baude, Is Qualified Immunity Unlawful? , 106 Cal. L. Rev. 45, 49-61 (2018), with Aaron L. Nielson & Christopher J. Walker, A Qualified Defense of Qualified Immunity , 93 Notre Dame L. Rev. 1853, 1856-63 (2018). Of course, we cannot ask such questions, much less answer them. We apply the Supreme Court's precedents faithfully. See Hutto v. Davis , 454 U.S. 370, 374-75, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam).

Of course, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." Hope v. Pelzer , 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). It is to say qualified immunity requires "fair notice" that precedent "squarely governs" the official action. Mullenix , 136 S.Ct. at 310, 314 (citing Brosseau , 543 U.S. at 201, 125 S.Ct. 596 ).

Some courts have suggested dicta can clearly establish the law for purposes of qualified immunity. They reason it is "arguably dicta" to find a constitutional violation at step one before granting qualified immunity at step two. But, they say, the very purpose of such "dicta" is to clearly establish the law for future qualified-immunity cases. Hanes v. Zurick , 578 F.3d 491, 496 (7th Cir. 2009) ; see also Ehrlich v. Town of Glastonbury , 348 F.3d 48, 56 n.11 (2d Cir. 2003). Since those cases were decided, however, the Supreme Court has clarified that "a constitutional ruling preparatory to a grant of immunity" is "[n]o mere dictum." Camreta v. Greene , 563 U.S. 692, 708, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011). As a result, these cases do not stand for the proposition dicta can clearly establish the law.

Supreme Court precedent renders irrelevant whether Meachum "deliberately" caused a fatal collision. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force...." Graham v. Connor , 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ; see also Anderson , 483 U.S. at 641, 107 S.Ct. 3034. "[D]etermining whether [a defendant] violated the Fourth Amendment requires us to ask, not whether it was reasonable to kill [the suspect] but whether it was reasonable to [act as the defendant did] in light of the risk to [the suspect]." Mullenix , 136 S.Ct. at 313 (Scalia, J., concurring in the judgment); see also Scott , 550 U.S. at 383, 127 S.Ct. 1769 ("[A]ll that matters is whether [the officer's] actions were reasonable."). For the same reasons, it is irrelevant whether Meachum subjectively believed "deadly force" was necessary.

In assessing a threat to the public, we consider not only the safety of those present at the moment of collision but also "the safety of those who could have been harmed if the chase continued." Pasco , 566 F.3d at 581 (citing Scott , 550 U.S. at 383-84, 127 S.Ct. 1769 ). For this reason, it does not matter whether the oncoming vehicles were in the northbound lane of US-183 (as Meachum testified) or the shoulder of the highway (as Appellants argued). Either way, they were in harm's way.

Appellants also rely on our original opinion in Vann , which we have withdrawn, see 884 F.3d at 309, and numerous cases from our sister courts of appeals that involved firearms. See Rodriguez v. Passinault , 637 F.3d 675 (6th Cir. 2011) ; Tubar v. Clift , 286 F. App'x 348 (9th Cir. 2008) (per curiam); Kirby v. Duva , 530 F.3d 475 (6th Cir. 2008) ; Adams v. Speers , 473 F.3d 989 (9th Cir. 2007) ; Murray-Ruhl v. Passinault , 246 F. App'x 338 (6th Cir. 2007) ; Jones v. City of Atlanta , 192 F. App'x 894 (11th Cir. 2006) ; Sigley v. City of Parma Heights , 437 F.3d 527 (6th Cir. 2006) ; Smith v. Cupp , 430 F.3d 766 (6th Cir. 2005) ; Vaughan v. Cox , 343 F.3d 1323 (11th Cir. 2003) ; Cowan ex rel. Cooper v. Breen , 352 F.3d 756 (2d Cir. 2003) ; McCaslin v. Wilkins , 183 F.3d 775 (8th Cir. 1999) ; Abraham v. Raso , 183 F.3d 279 (3d Cir. 1999) ; Estate of Starks v. Enyart , 5 F.3d 230 (7th Cir. 1993). These decisions did not clearly establish the law for the same reasons Lytle did not.