# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 26, 2022

Lyle W. Cayce
Clerk

No. 21-50074

Zachariah J. Holm,

*Plaintiff—Appellant*,

*versus*

Derrick Sassenhagen, *Sergeant*; Officer FNU Martinez, *Comal County Sheriff's Office*; Officer FNU Ruiz, *Comal County Sheriff's Office*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
No. 5:19-CV-42-RBF

Before Smith, Clement, and Haynes, *Circuit Judges*.

Per Curiam:*

Zachariah Holm brought a § 1983 suit against three officers of the Comal County Sheriff's Office, alleging that they used excessive force against him in violation of the Fourteenth Amendment. He timely appeals

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-50074

the lower court's grant of summary judgment in favor of the officers on the basis of qualified immunity and the denial of his motion for appointment of counsel.  For the following reasons, we AFFIRM.

**I**

On December 31, 2018, Holm initiated a violent altercation with correctional officers as a pretrial detainee held in the Comal County Jail.  The incident was captured on video.  Holm and several other pretrial detainees had flooded their cell block, and officers responded in riot gear to deescalate the scene.  Disobeying direct orders to face the wall, Holm ran out of his cell and charged the officers.

Six days later, on January 6, 2019, Holm engaged in another physical altercation, which is the subject of this appeal.  The incident involved Officer Salvador Martinez, Officer Daniel Ruiz, and Sergeant Derrick Sassenhagen, each of whom was aware of Holm's recent aggressive behavior.  The record includes body camera footage from Martinez and Ruiz and an overhead recording without audio.

The videos begin with Martinez waiting for Ruiz to assist in escorting Holm between cells.  After the cell door opened, Martinez ordered Holm to exit and place his hands behind his back.  Holm complied.  The officers escorted him single-file in the narrow hallway.  Holm walked in front of Martinez with Ruiz at the tail.

After a few seconds, Holm turned his shoulders toward Martinez and said, "Hey, don't step on my feet man."  Martinez put a hand on Holm's upper back and ordered him to "keep walking" multiple times.  Although Holm kept his hands behind his back, the video establishes that he disobeyed Martinez's direct and repeated orders.  Instead of walking forward, Holm slowed down and turned his shoulders further as though to confront the officers in the cramped confines of the hallway.  In addition to this physical

2

No. 21-50074

posture, Holm said in an agitated, loud tone: "Get your mother-f*cking hands off me."

Martinez then took Holm to the ground with Ruiz's help.[1]  On the ground, the officers attempted to handcuff Holm.  The video shows that Holm physically resisted and cursed at the officers: "Are you f*cking kidding me?"  A few seconds later, Sassenhagen arrived to assist.  He placed one knee and one hand on Holm's back to restrain him.

The video establishes an ongoing, physical struggle between the officers and Holm.  After twelve seconds, Martinez ordered Holm to put his hands behind his back.  To effect compliance, Martinez struck Holm on his upper shoulder.  Holm contends that Sassenhagen also struck him in the head and face, which the videos do not contradict.[2]  As soon as the officers handcuffed Holm, they ceased the use of force, released the restraint, and escorted Holm to an observation cell.  In total, the struggle on the floor lasted only 56 seconds.

Holm was treated for shoulder, head, and jaw pain on the day of the incident and again the day after.  He presented with bruising on his left eye, his jaw, and the back of his head.

In connection with this incident, Holm was found guilty by the disciplinary board of "disruption of the orderly running of the facility."

---

[1] The magistrate judge found no evidence that Ruiz assisted with the takedown. But the record establishes it.  Ruiz's body camera shows him grabbing and bringing Holm to the ground.

[2] The officers deny that Sassenhagen struck Holm.  But the video does not blatantly contradict Holm's allegations. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Moreover, immediately after the incident, Holm complained of being "punch[ed] in the face," and his medical records reflected bruising, swelling, and tenderness to his head and face.  The magistrate judge thus erred in crediting the officers' version of the facts. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

No. 21-50074

Holm's grievance relating to the incident was denied.

On January 14, Holm brought this *pro se* suit under 42 U.S.C. § 1983 against Martinez, Ruiz, and Sassenhagen, in their individual capacities. He asserted violations of his Eighth Amendment right against cruel and unusual punishment; because he was a pretrial detainee at the time of the incident, the magistrate judge construed his theory as implicating his Fourteenth Amendment right against punishment before conviction. Holm filed a motion for a temporary restraining order against the officers and for appointment of counsel, which was denied. He agreed to have his case proceed before a magistrate judge. The officers moved for summary judgment, arguing that they were entitled to qualified immunity. The magistrate judge granted summary judgment in their favor. Holm appealed the "outcome" of the case, which we liberally interpret as the Order denying the appointment of counsel and the Order granting summary judgment. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

## II

We first determine whether Martinez, Ruiz, and Sassenhagen are entitled to qualified immunity. We then consider whether the magistrate judge abused his discretion by denying appointment of counsel.

## A

Our review is *de novo*. *See Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). "Qualified immunity includes two inquiries. The first question is whether the officer violated a constitutional right. The second question is whether the 'right at issue was "clearly established" at the time of the alleged misconduct.'" *Id.* (alteration adopted) (quoting *Pearson v. Callahan*, 555

4

U.S. 223, 232 (2009)).  The two questions may be answered in any order.  *See Pearson*, 555 U.S. at 236.

As to the second prong of qualified immunity, "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'"  *Tucker v. City of Shreveport*, 998 F.3d 165, 172 (5th Cir. 2021) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)).  "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact."  *Id.* (quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005)).  In other words, "existing precedent must have placed the statutory or constitutional question beyond debate."  *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)).

At summary judgment, a defendant's good-faith invocation of qualified immunity shifts the burden to the plaintiff to "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."  *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019) (citation omitted).  We still construe all facts and draw all reasonable inferences in the light most favorable to the nonmovant.  *Meachum*, 917 F.3d at 874.  But where, as here, there is video and audio recording of the facts at issue, we are not required to accept factual allegations "blatantly contradicted by the record" but may instead "view[] the facts [as] depicted by the videotape."  *Harris*, 550 U.S. at 380–81.

"Force against a pretrial detainee is 'excessive' and a violation of the Fourteenth Amendment when the force was objectively unreasonable."  *Fairchild v. Coryell Cnty.*, 40 F.4th 359, 362–63 (5th Cir. 2022) (citing

*Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)).  The crux of Holm's complaint is that the takedown by Martinez and Ruiz and the strikes by Martinez and Sassenhagen constituted objectively unreasonable force.[3]  However, we need not determine whether the officers' use of force to effect a takedown and restraint on the ground was objectively unreasonable because the asserted right against that use of force was not clearly established.

Starting with the takedown, our case law has not established that it is objectively unreasonable to bring to the ground and restrain a verbally and physically aggressive, unrestrained pretrial detainee after seeking compliance with verbal commands.  *See Tennyson v. Villareal*, 801 F. App'x 295, 296 (5th Cir. 2020) (holding takedown was not objectively unreasonable where pretrial detainee failed to comply with orders); *Waddleton v. Rodriguez*, 750 F. App'x 248, 251, 254–55 (5th Cir. 2018) (holding takedown was not objectively unreasonable where prisoner was verbally aggressive and "quickly turn[ed] . . . towards the officers").

The strikes to Holm's body, head, and face present a closer call.  But two factors distinguish the specific facts here from cases where we held that objectively unreasonable force was used.  First, Holm was unrestrained and continued to disobey the officers' commands by actively resisting on the ground.  This is not a case where a pretrial detainee was subjected to the

---

[3] The magistrate judge found that "only Defendants have introduced competent summary judgment evidence" because "Holm offer[ed] no affidavit or other evidence" and the body camera footage "does not on its own raise a genuine issue of material fact." That was error.  Holm's verified complaint serves as competent summary judgment evidence. *See Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) (per curiam).  And he is not required to show that the videos affirmatively establish misconduct, only that they do not "utterly discredit[]" his version of the facts. *Bourne*, 921 F.3d at 490 (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017)).

continued use of force after he was subdued or handcuffed. *See Fairchild*, 40 F.4th at 368; *cf. Timpa v. Dillard*, 20 F.4th 1020, 1034 (5th Cir. 2021).

Second, the officers' response was informed by Holm's recent violent attack on correctional officers. The heightened risk to officer safety present upon these facts is a significant factor distinguishing this case. *Compare Benoit v. Bordelon*, 596 F. App'x 264, 268 (5th Cir. 2015) (upholding finding of excessive force where officers choked a "calm, non-violent inmate" whose "hands and legs were shackled"), *with Narro v. Edwards*, 829 F. App'x 7, 13 (5th Cir. 2020) (per curiam) (affirming qualified immunity where officer "used a non-deadly punch to gain control of a resisting inmate and prevent his own assault"); *cf. Fairchild*, 40 F.4th at 367–68 (noting that officers' "strikes and punches may have crossed the line of excessiveness but—given the need to subdue [the inmate] at this juncture—not clearly so").

We therefore agree with the district court that Holm has not met his burden to rebut the officers' invocations of qualified immunity.

**B**

We review the denial of a motion for appointment of counsel for abuse of discretion. *See Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987). Because Holm has not shown that the case involves exceptional circumstances, it was not an abuse of discretion to deny his motion. *See Ulmer v. Chancellor*, 691 F.2d 209, 212–13 (5th Cir. 1982).

\*　　\*　　\*

We AFFIRM.