# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 5, 2024

Lyle W. Cayce
Clerk

No. 23-40673

RUBEN CANTU,

*Plaintiff—Appellee*,

*versus*

CHRISTIAN TAMEZ, *individually*; ROBERTO RODRIGUEZ, *individually*; GERRARDO OCHOA, *individually*,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:21-CV-155

Before HO, DUNCAN, and OLDHAM, *Circuit Judges*.

PER CURIAM:*

This is yet another qualified immunity excessive force case. Much of the incident is caught on video, but the fateful seconds are not. The parties offer competing versions of what happened off camera. The district court denied qualified immunity at summary judgment. We AFFIRM in part and REVERSE in part.

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-40673

I

A

On March 25, 2019, Officer Roberto Rodriguez stopped a white Jeep Grand Cherokee in Weslaco, Texas. Ruben Cantu emerged from the Jeep and walked toward Officer Rodriguez, ignoring instructions to "get back." Officer Rodriguez arrested and handcuffed Cantu with the assistance of Officer Federico Salazar, who had just arrived. After citing Cantu for a number of traffic violations, Officer Rodriguez transported Cantu to the Weslaco Police Department jail. The traffic stop was captured on video from Officer Rodriguez's vehicle.

On May 15, 2019, Cantu filed a personnel complaint with the Weslaco Police Department against Officer Rodriguez for his conduct during the traffic stop.

Two weeks later, on May 30, Cantu appeared in Weslaco Municipal Court in connection with the citations he received from the traffic stop two months prior. After Cantu disregarded verbal orders from the municipal judge to sit down, the judge held Cantu in contempt and ordered Officer Christian Tamez to arrest him. After handcuffing Cantu with his arms behind his back, Officer Tamez escorted Cantu out of the courtroom (and out of the camera's eye). Officer Gerrardo Ochoa followed. A few seconds later, a commotion in the hallway became audible in the courtroom, and Officer Rodriguez ran into the hallway too.[1] All this was captured by a video camera in the courtroom.

What happened next is the subject of Cantu's § 1983 suit, and it is *not* on video. Cantu claims that Officers Tamez and Rodriguez slammed him into

---

[1] This is the same Officer Rodriguez from Cantu's traffic stop on March 25, 2019.

a wall while Officer Ochoa was present, even though Cantu was being compliant and cooperative. But the officers swear that Cantu resisted arrest by pushing his foot off a wall near a door to prevent himself from being escorted through. They also deny slamming Cantu.

Cantu and the officers next appear on a hallway video camera 20–25 seconds later. Officers Tamez and Rodriguez restrained Cantu, who was still handcuffed, by standing on each side of him and looping their arms through Cantu's. They escorted Cantu through a door held open by Officer Ochoa. Next, a third video camera shows Officers Tamez and Rodriguez bringing Cantu into the Weslaco Police Department booking room, where they placed him on a bench.

After Officers Tamez and Rodriguez left, Cantu remained in the booking room rubbing his shoulder and complaining about his collarbone. After about 15 minutes, a guard brought Cantu to a cell. A fourth camera shows Cantu holding and rubbing his collarbone as he sat in the cell alone. That evening, after fire department officials examined Cantu, Weslaco Police officials brought him to Knapp Medical Center in Weslaco. There, a doctor diagnosed Cantu with a displaced fracture of the lateral end of his right clavicle and acute hypertension. The hospital discharged Cantu, sending him home in a sling with pain meds and instructions for outpatient follow-up.

Cantu sued Officers Tamez, Rodriguez, and Ochoa for damages under 42 U.S.C. § 1983. Cantu alleges that Officers Tamez and Rodriguez used excessive force against him in violation of the Fourth Amendment, and he alleges that Officer Ochoa unreasonably failed to intervene in violation of the Fourth Amendment. The district court denied the officers' summary-judgment motions for qualified immunity in an oral order, citing "fact issues."

B

Our review is *de novo*. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). We view the facts in the light most favorable to Cantu and draw all reasonable inferences in his favor. *Id.* On an officer's interlocutory appeal from the denial of qualified immunity at summary judgment, we are limited to reviewing "the *materiality* (*i.e.*, legal significance) of factual disputes the district court determined were genuine, not their genuineness (*i.e.*, existence)." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023). Even so, "we are permitted to review genuineness where . . . video evidence is available" and supports one party's version of events. *Id.*; *see also Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

II

The qualified-immunity inquiry has two steps. First, we ask whether "the officer's conduct violated a federal right." *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). Second, we ask "whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his [] conduct." *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc) (quoting *Tolan*, 572 U.S. at 656).

Here, we resolve the inquiry on the "clearly established" step. *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015). We (A) deny qualified immunity to Officers Tamez and Rodriguez and (B) grant qualified immunity to Officer Ochoa.

A

In denying Officer Tamez's and Officer Rodriguez's summary-judgment motions for qualified immunity in an oral order, the district court found there were "fact issues" regarding "whether the force used by Defendant Tamez was excessive or reasonable" and "whether the force used by

4

Officer Rodriguez was excessive or reasonable." We interpret the district court to have held that there was a genuine dispute as to these facts. *See* Fed. Rule Civ. Proc. 56(c).

"[A] police officer uses excessive force when the officer strikes, punches, or violently slams a suspect who is not resisting arrest." *Darden v. City of Fort Worth*, 880 F.3d 722, 732 (5th Cir. 2018) (collecting cases); *see also Curran v. Aleshire*, 800 F.3d 656, 663 (5th Cir. 2015) (finding no legal error in a district court's conclusion that "slamming a student's head into the wall after her resistance had ceased is a violation of clearly established law").

Here, a genuine dispute of material act precludes summary judgment for Officers Tamez and Rodriguez. Cantu was in handcuffs in the hallway. He claims the officers slammed him into the wall for no reason. The officers by contrast claim Cantu resisted arrest and was never slammed. Although there is video footage immediately before and after the contested events, there is no video footage of the events themselves. Without video or other blatant contradictions in the record, "we do not second-guess the district court's determination that there are genuine disputes of material fact." *Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020); *cf. Scott*, 550 U.S. at 380–81. Viewing the facts in the light most favorable to Cantu, *see Morrow*, 917 F.3d at 874, the district court correctly denied summary judgment to Officers Tamez and Rodriguez.

B

In denying Officer Ochoa's summary-judgment motion for qualified immunity in an oral order, the district court found that there were "fact issues" regarding "whether Defendant Ochoa used force and whether the force he used was excessive." We interpret the district court to have held

that there was a genuine dispute as to these facts. *See* Fed. Rule Civ. Proc. 56(c).

Although the district court held that there was a genuine dispute as to whether Officer Ochoa used force, the parties agree on appeal that Officer Ochoa did not touch Cantu. So if Officer Ochoa violated Cantu's rights, it was only through bystander liability—on the theory he unreasonably failed to prevent Officers Tamez and Rodriguez from using excessive force against Cantu.

An officer is liable for failure to intervene when that officer knew a fellow officer was violating an individual's constitutional rights, was present at the scene of the constitutional violation, and had a reasonable opportunity to prevent the harm but nevertheless chose not to act. *Bartlett*, 981 F.3d at 343. "Bystander liability requires more than mere presence in the vicinity of the violation; we also consider whether an officer acquiesced in the alleged constitutional violation." *Id.* at 343.

Even if Officers Tamez and Rodriguez *did* use excessive force against Cantu in Officer Ochoa's presence, Cantu has not identified a single case clearly establishing that any reasonable officer would have known to intervene in circumstances like this, let alone that Ochoa had a reasonable opportunity to act when the alleged "slamming" took place in at most 25 seconds. Furthermore, Officer Ochoa's mere presence and act of holding a door open is not sufficient to show that he acquiesced in excessive force (again, assuming anyone used it).

\*   \*   \*

The denial of Officer Tamez's and Officer Rodriguez's summary-judgment motions for qualified immunity is AFFIRMED. The denial of Officer Ochoa's summary-judgment motion for qualified immunity is REVERSED.

6