# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 30, 2024

Lyle W. Cayce
Clerk

No. 22-20028

Corey Spiller,

*Plaintiff—Appellant*,

*versus*

Harris County, Texas; Harris County Constable Precinct 7; Constable May Walker; Jared Lindsay,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
No. 4:20-CV-3878

_____

Before Jones, Dennis, and Willett, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

At approximately 4:00 a.m. on December 21, 2019, Corey Spiller drove to assist his girlfriend, Dashanelle Moore, after her minor single car accident on a Houston elevated expressway. Much of the episode forming the basis of this lawsuit was captured on police body-worn cameras. Both parties rely on those videos as accurately capturing and showing the facts in their conflicting versions of what happened.

At the scene, Spiller and Moore peaceably conversed with officers until a supervisor, Sergeant Jared Lindsay, arrived. Lindsay Video at 21:30–

40. Lindsay briefly questioned Moore and rebuked Spiller for attempting to answer for her. Lindsay Video at 22:10–23:20. He then directed Moore to go with an officer to a nearby truck stop for further police procedures and he told Spiller to follow in his car. Lindsay Video at 23:21–23:32. Spiller attempted to ask Lindsay and other officers about what would happen to Moore. Lindsay Video at 23:28–23:33. Lindsay became enraged, seized Spiller at his neck, and slammed him on his back on the hood of a parked car. Lindsay Video at 23:40–50; Lane Video at 8:10–20. The two tumbled to the pavement and continued to scuffle as the other officers intervened and grasped Spiller. Lindsay Video at 23:50–56. One officer tased Spiller in his back. Lindsay Video at 23:57–24:03. Spiller was arrested and taken into custody, but charges against him were later dropped.

Spiller filed suit under 42 U.S.C. § 1983 against Lindsay in his individual and official capacities, Harris County, Harris County Constable Precinct 7, and Chief Constable May Walker in her individual and official capacities. Spiller brought claims for excessive force and false arrest, bystander liability, retaliation, and a violation of the Americans with Disabilities Act (ADA). The district court dismissed Harris County, Precinct 7, and Chief Constable Walker for failure to state a claim and later granted summary judgment for Lindsay on the basis of qualified immunity. Spiller timely appealed,[1] challenging the entry of summary judgment dismissing his

---

[1] With respect to the district court's dismissal of Spiller's claims against Precinct 7 and claims against Chief Constable Walker and Harris County for false arrest, First Amendment retaliation, bystander liability, and ADA violations, Spiller does not challenge these rulings in his briefing. A party forfeits an argument challenging the district court's ruling by not raising it on appeal. *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021). Likewise, with respect to Spiller's claims against Chief Constable Walker for supervisory liability, he does not even mention supervisory liability in his briefing. Accordingly, Spiller has forfeited those claims due to inadequate briefing. *See DeVoss v. Sw.*

No. 22-20028

Fourth Amendment excessive force, Fourth Amendment false arrest, First Amendment retaliation, and bystander liability claims against Lindsay; and the dismissal of his *Monell*[2] claim against Harris County.

I

We review a grant of summary judgment on the basis of qualified immunity de novo. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (citing *Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018)). When a public official makes "a good-faith assertion of qualified immunity," that "alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 329-30 (5th Cir. 2020) (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)). As is normal for summary judgment, "[t]he plaintiff must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury." *Id.* at 330. However, unique to the qualified immunity context, "to overcome qualified immunity, the plaintiff's version of those disputed facts must also constitute a violation of clearly established law." *Id.*

We review the grant of a motion to dismiss for failure to state a *Monell* claim de novo. *Henderson v. Harris Cnty.*, 51 F.4th 125, 130 (5th Cir. 2022) (citing *Groden v. City of Dall.*, 826 F.3d 280, 283 (5th Cir. 2016)). We take all factual allegations as true and construe the facts in the light most favorable to the plaintiff. *See Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017) (citing *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017)). When considering the denial of a Rule 12(b)(6) motion, the pertinent

---

*Airlines Co.*, 903 F.3d 487, 489 n.1 (5th Cir. 2018) (concluding that failure to adequately brief a claim on appeal forfeits it).

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

inquiry is whether the plaintiff has alleged facts that raise a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Put differently, a Rule 12(b)(6) motion should be denied if the facts in the complaint, when taken as true, "raise a right to relief above the speculative level." *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017) (quoting *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015)).

## II

## A

Lindsay was not entitled to qualified immunity from Spiller's excessive force claim on summary judgment. Because the videos of Sergeant Lindsay and Deputy Lane, and the record as a whole, do not blatantly contradict Spiller's version of events so that no reasonable jury could believe it, this case does not fall within the exceptional holding of *Scott v. Harris*, 550 U.S. 372, 380 (2007) (admonishing us to not adopt or advert to the plaintiff's version of the facts for purposes of ruling on a motion for summary judgment when the plaintiff's version of events is utterly discredited by video evidence). Instead, we apply Rule 56 of the Federal Rules of Civil Procedure unvarnished. Doing so, we conclude that Lindsay failed to show the absence of a genuine dispute of material fact as to both elements of qualified immunity: whether Lindsay violated Spiller's Fourth Amendment right to be free from excessive force; and "whether the right at issue was clearly established at the time of [the] alleged misconduct." *Morrow*, 917 F.3d at 974 (alteration in original) (internal quotations omitted).

*First*, a violation of the Fourth Amendment "occurs when a seized person suffers an injury that results directly and only from a clearly excessive and objectively unreasonable use of force." *Joseph*, 981 F.3d at 332 (citing *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)). "Determining whether force was excessive or unreasonable is a 'necessarily fact-intensive'

and case-specific inquiry." *Id.* (quoting *Poole*, 691 F.3d at 628). Lindsay's affidavit contends that he was justified in seizing and body slamming Spiller because Spiller (1) interfered with his investigation and (2) elbowed him in his stomach.

To the first point, Lindsay and the dissent suggest that Lindsay's force was justified because Spiller was "actively obstructing [an] investigation," i.e., the severity of the crime—interfering with public duties—was great. *Post*, at 19 (Jones, J., dissenting). But the Fifth Circuit has held that this offense is "minor," a factor that weighs in favor of finding excessive force. *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018) (holding that, as to *Graham*'s[3] first factor, the severity of the crime, interference with public duties is a minor offense).

To the second point in Lindsay's affidavit, Spiller's declaration states that Lindsay attacked him with excessive, unreasonable force, which was totally unjustified and unprovoked by any act by Spiller. Spiller's declaration specifically asserts that he did not elbow Lindsay and that he was not actively resisting. *Joseph*, 981 F.3d at 336 (finding excessive force was used when officers beat and tased a man who—in the plaintiff's version of the facts— was not suspected of a crime and who, while not following instructions, was not actively resisting); *see also Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013) (holding that officers exerted excessive force by immediately tasing and forcing to the ground a person whose only resistance was merely failing to comply with orders to put his hands behind his back and pulling his arm away

---

[3] *Graham v. Connor*, 490 U.S. 386, 396 (1989) (outlining a few considerations that inform the need for force: the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect was actively resisting arrest or attempting to evade by flight).

when an officer grabbed his hand). Lindsay and the dissent exaggerate[4] the video evidence by arguing it "clearly shows that the first blow was struck by Spiller when he elbowed Sergeant Lindsay in the chest." *Post*, at 20. The key moment in the footage is when Lindsay steps into Spiller's face and Spiller moves his elbow. The video evidence does not show Spiller striking Lindsay. Instead, the bodycams show Spiller maneuvering to get a view of the officers he was addressing and creating space between himself and Lindsay. Lindsay Video at 23:40–50; Lane Video at 8:10–20. At that same time, Lindsay barreled toward Spiller, which caused Spiller's elbow to rub up against Lindsay.

Because the video evidence in the record does not completely refute Spiller's declaration, we apply Rule 56, find there is a genuine dispute of material fact as to whether Spiller "elbowed" Lindsay, and assume that the jury will believe the non-moving party's evidence at trial. *Scott*, 550 U.S. at 380; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

*Second*, we conclude that the right to be free from excessive force was clearly established at the time of the violation in this case. *See Joseph*, 981 F.3d at 342 (relying on, inter alia, *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) and *Ramirez*, 716 F.3d at 378–79, for the "long . . . established [rule] in our circuit [that] [o]fficers engage in excessive force when they

---

[4] "Video is no magic bullet to end fierce conflicts in interpretation." Mary D. Fan, *Democratizing Proof: Pooling Public and Policy Body-Camera Videos*, 96 N.C. L. Rev. 1639, 1658 (2018). Legal scholars have commented that "[t]he allure of video's seeming transparency into truth heightens the risk that viewers will miss the persuasion effects and even potential distortion caused by angle, framing, perspective, and the filter of one's own preconceived notions." *Id.* at 1662.

physically strike a suspect who is not resisting arrest").[5] *Newman* involved excessive force against an individual who had only made off-hand remarks and stepped back into officers during a pat down. 703 F.3d at 760–64. *Ramirez* involved excessive force against an individual whose only resistance was merely failing to comply with orders to put his hands behind his back and pulling his arm away when an officer grabbed his hand. 716 F.3d at 378. These cases are factually similar to this case, in which Lindsay used force after the only things Spiller did was not immediately comply with instructions to leave the scene and maneuvered his elbow near Lindsay to maintain a line of sight to the officers he was speaking with and to create space between himself and Lindsay. These cases establish that officers engage in excessive force when they physically strike a suspect who is not resisting arrest. *Joseph*, 981 F.3d at 342. Moreover, *Newman*, in which the force occurred against an individual not suspected of wrongdoing, 703 F.3d at 764, and *Westfall*, in which an individual was tackled even though she was not under arrest, 903 F.3d at 548, establish that less force is permissible against individuals not yet under arrest, like Spiller in this case.

For its part, the dissent tries to distinguish *Newman* and *Ramirez* by improperly resolving two fact disputes in favor of the moving party. First, whether Spiller struck Lindsay, which, for the reasons already explained, is genuinely disputed. And second, whether Spiller was potentially intoxicated.

---

[5] *Joseph* itself did not clearly establish the right at issue for the present case because it was decided after 2019, the year in which the events in this case took place. *See Salazar v. Molina*, 37 F.4th 278, 286 (5th Cir. 2022). Nevertheless, *Joseph* relied on *Newman* and *Ramirez*, cases decided in 2012 and 2013 respectively, to find that it has "long been established in our circuit [that] [o]fficers engage in excessive force when they physically strike a suspect who is not resisting arrest." 981 F.3d at 342. *Newman* and *Ramirez* clearly establish the right at issue here because they were decided before 2019.

No. 22-20028

*Post*, at 19–21. Putting aside materiality,[6] there is a genuine dispute of fact as to whether Lindsay suspected Spiller (as opposed to Spiller's then-girlfriend) of intoxication—after all, Lindsay directed Spiller to get into his vehicle and drive it away from the scene. That request does not jibe with a supposed contemporaneous belief that Spiller had been drinking.

Having found genuine fact disputes material to the existence of a constitutional violation and concluding that the right at issue was clearly established at the time Lindsay's misconduct occurred, we reverse the district court's grant of summary judgment to Lindsay on Spiller's excessive force claim.[7] A jury may ultimately decide the facts against Spiller, but at this stage, he has made an adequate showing to "go to trial for damages." *Post*, at 17.

### III

Next, the district court found that Lindsay was entitled to qualified immunity from Spiller's Fourth Amendment false arrest claim on summary judgment because "[a] reasonably competent officer could have believed that probable cause existed for [Spiller's] arrest." "A false-arrest claim requires a showing of no probable cause." *Westfall*, 903 F.3d at 542 (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)). Lindsay had probable cause to arrest Spiller for interference with public duties. Section 38.15 of the Texas Penal Code provides: "A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or

---

[6] *See post*, at 16 n.10 (WILLETT, J., concurring) ("I do not take the dissent to suggest that an officer can chokeslam someone based on the smell of alcohol.").

[7] The dissent includes a throw-away argument that Spiller "suffered no injury[.]" *Post*, at 21. That is wrong. Spiller submitted an affidavit saying Lindsay's challenged acts caused him "pain" and to "fear for [his] life."

exercising authority imposed or granted by law." TEX. PENAL CODE § 38.15(a)(1). Texas courts have affirmed convictions of defendants who failed to comply with an officer's instruction to move away from a crime scene. *See, e.g.*, *Duncantell v. State*, 230 S.W.3d 835, 842 (Tex. App.—Hous. [14th Dist.] 2007, pet. ref'd) (finding that defendant violated Texas Penal Code § 38.15 by repeatedly disregarding officers' orders to stand away from crime scene during an investigation). Likewise, the Fifth Circuit has found probable cause when an individual fails to follow instructions necessary for an officer to perform their duties. *See, e.g.*, *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017).

In this case, during the investigation, Spiller at one point answered a question for Moore, prompting Lindsay to tell him to let Moore answer. Lindsay Video at 22:34–22:38. Spiller does not dispute this. Lindsay then asked Spiller to leave the scene multiple times while Moore went with the other officers to complete the investigation. Lindsay Video at 23:22–23:40. Like in the cases cited above, a reasonable officer could think Spiller was interfering with the investigation by refusing to leave while the investigation was being completed. *See, e.g.*, *Childers*, 848 F.3d at 415; *Westfall*, 903 F.3d at 544; *Duncantell*, 230 S.W.3d at 842. Because there was probable cause for Spiller's arrest for interference with public duties, Spiller has failed to show a constitutional violation, and Lindsay was entitled to qualified immunity on Spiller's false arrest claim.[8]

IV

---

[8] Separately, the district court granted summary judgment as to Spiller's bystander liability claim against Lindsay. Spiller inadequately uses a single sentence of analysis on this claim in his briefing; it is forfeited. *See DeVoss*, 903 F.3d at 489 n.1.

No. 22-20028

The district court also found that Lindsay was entitled to qualified immunity for Spiller's First Amendment retaliation claim on summary judgment "[b]ecause Lindsay had probable cause to arrest Spiller." Generally, "[i]f [probable cause] exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment." *Westfall*, 903 F.3d at 550 (second alteration in original) (quoting *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008)). In this case, as already explained, Lindsay had probable cause to arrest Spiller for interference with public duties.[9] The district court's grant of qualified immunity on Spiller's First Amendment retaliation claim was proper.

V

Finally, the district court properly dismissed Spiller's *Monell* claim against Harris County under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Spiller failed to allege any specific facts from which it may be inferred that he was injured by any policy, custom, or practice of the County that was a moving force of his altercation with Lindsay. *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017)).

VI

For the foregoing reasons, we REVERSE the district court's award of summary judgment to Lindsay based on qualified immunity from Spiller's

---

[9] Spiller does not argue that the exception recognized in *Nieves v. Bartlett*, 587 U.S. 391 (2019), to the no-probable-cause requirement applies. *See Gonzalez v. Trevino*, 144 S. Ct. 1663, 1665–66 (2024) (noting that the no-probable-cause requirement does not apply "if [t]he [plaintiff] produces 'objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'" (quoting *Nieves*, 587 U.S. at 407)).

No. 22-20028

claim for excessive force, AFFIRM the district court in all other respects, and REMAND this case for further proceedings not inconsistent with this opinion.

No. 22-20028

Don R. Willett, *Circuit Judge*, concurring:

Videos from police body and dashboard cameras and bystanders' smartphones play a front-and-center role in many excessive-force cases. For police officers, body-worn video cameras, like badges and firearms, are becoming standard-issue equipment. Sometimes the captured footage convincingly shows an officer's actions were justified (limiting police liability), sometimes the footage convincingly shows the opposite (enhancing police accountability)—and sometimes the footage is less convincing than confounding.

As this case shows, absolute truth is sometimes hard to pin down, even when captured by high-definition video. And visual storytelling in use-of-force cases usually involves the parties jousting over what is—and is not—shown on screen. "When opposing parties tell two different stories," we must assess the factual dispute in light of the video evidence.[1] And while such evidence can sharpen our decision-making by leaving less room for speculation and guesswork, it can often raise as many questions as it answers—for example, what about what the footage *doesn't* show . . . the events that took place during the run-up to the alleged misconduct? And even what the often-harrowing video *does* show can become a Rorschach test of sorts, as viewers filter objective evidence through subjective experience. Where some see damning digital proof, others see clear-cut exoneration.

Civil-rights lawsuits alleging police abuse are fact-intensive, and we must scrutinize every minute detail of these often-chaotic encounters. And make no mistake, the process is not glamorous. We painstakingly examine every frame: watching, re-watching, re-re-watching, pausing, rewinding, and sometimes squinting—and then comparing what we saw with our own eyes

_____

[1] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

to the parties' competing *descriptions* of what we saw.[2] Invariably, there will be incongruities—a gentle word for it—between what we see on the screen and what we read in the briefs. Advocates, after all, are hardwired for certitude, insisting the video "clearly" shows this or "indisputably" shows that. Sometimes that's true—but just as often, not.

As nonaligned observers, judges are not predisposed to overstate/understate based on personal involvement in the dispute or a stake in who wins. That said, we're far from perfect. Even high-definition video footage can yield competing eye-of-the-beholder takeaways. And the most disinterested observer may not always appreciate the full picture. Indeed, the dissent believes just that, leveling the accusation that we have, apparently, omitted "[s]everal critical details" from the bodycam footage and consequently produced "an absurd result on the facts before" us.[3] I, of course, disagree with both the accusation and the characterization. As best I can tell, the majority's description is largely faithful to what the evidence shows in light of the allegations made. But after reading the dissent, one can only wonder how we can reach such polar-opposite conclusions from the same video.

Describing video footage is tricky. But we must do our best. Just as the parties must explain themselves to us, we must explain ourselves to them—and to the public.[4] My colleagues have offered competing accounts of the video, and below I add mine.

---

[2] *See Boyd v. McNamara*, 74 F.4th 662, 665 (5th Cir. 2015) ("[W]e are required to view the facts in the light depicted by the videotape." (internal quotations omitted)).

[3] *Post*, at 17 (JONES, J., dissenting).

[4] As former Supreme Court Justice Tom C. Clark once remarked, "You see, we don't have an army to enforce our opinions, and we don't have any money . . . to run an ad in the newspaper. The only way we have is logic and the force and common sense of the

No. 22-20028

\*      \*      \*

After Sergeant Lindsay arrives at the scene and is quickly debriefed about the accident, he questions both Moore and Spiller. His questions were curt and direct. So were the answers from Moore and Spiller. While the other officers seem to have been preoccupied with the wrecker and removing Moore's car from the tollway, Sergeant Lindsay asks the other officers if they smell something—which, he later says in his affidavit, was a "strong odor of alcohol."

Sergeant Lindsay then directs Moore to go with an officer to a nearby truck stop, telling Spiller that he can follow in his car. Spiller tried to ask follow-up questions, but Sergeant Lindsay cut him off twice. Visibly frustrated, Spiller insists on speaking with the officers who, up until Sergeant Lindsay arrived, had no issues with Spiller. Sergeant Lindsay, also frustrated, rapidly approaches Spiller, their bodies inches away, and informs Spiller that he (Sergeant Lindsay) is the supervisor.

Then, in what appears to be an attempt to create space between him and Sergeant Lindsay, Spiller extends his elbow out, rubbing up against Sergeant Lindsay's stomach. Sergeant Lindsay reacts by grabbing Spiller by his neck and throwing him down on the hood of a patrol car. A struggle ensues, with both Sergeant Lindsay and Spiller grabbing each other by the arms. Once Sergeant Lindsay has him pinned down, Spiller appears to swipe at Sergeant Lindsay's nose with his hand, but it is unclear (at best) whether he ever makes contact. Spiller later falls to the ground, other officers pouncing on him to detain him, and ultimately ending with Spiller getting tased multiple times in the back.

---

opinion." Mimi Clark Gronlund, Supreme Court Justice Tom C. Clark 189 (2010).

No. 22-20028

\*     \*     \*

Those are the crucial details as I see them. Much can be said about the differences between the above description and the dissent's, but I think there are at least three worth pinpointing.

*First*, according to the dissent, "Spiller clenched his fist and elbowed Sergeant Lindsay in the chest."[5] With respect, I do not see either of those things. Up until Sergeant Lindsay grabbed Spiller by his neck, one of Spiller's hands was in his jacket pocket, and the other was gesturing toward Moore. So it is unclear where the dissent spies a clenched fist. As far as I can tell, "it doesn't register on the video at all."[6]

*Second*, when the dissent says Spiller "elbowed Sergeant Lindsay in the chest," I take that to be an overstated way of simply saying that Spiller moved his elbow in a way that created space between him and Sergeant Lindsay—a natural reaction when someone larger than you, officer or not, suddenly gets in your face for the purpose of intimidation.[7]

*Third*, and finally, it is unclear how the dissent so assuredly observes "Spiller punch[] Sergeant Lindsay in the upper lip and jaw, causing injuries."[8] There were, to be sure, hands and arms flailing around after Sergeant Lindsay chokeslammed Spiller onto the patrol car. And Spiller's hand did indeed fly near Sergeant Lindsay's face as they were both struggling atop the car, possibly showing an attempted punch or swipe—maybe, maybe

---

[5] *Post*, at 18 (JONES, J., dissenting).

[6] *Id.*

[7] Ironically, the dissent's description of what Sergeant Lindsay might have done to Spiller—"not much of a nudge"—more aptly fits what we see Spiller do to Sergeant Lindsay. *Id.*

[8] *Id.*

No. 22-20028

not. But, from the point of view provided on Officer Lane's bodycam, I am doubtful Spiller ever connected his attempted punch (if it was indeed an attempted punch[9]). Whatever happened, though, I certainly cannot describe it with anything close to the dissent's unswerving conviction, and more importantly for the excessive-force claim before us, it was well after Sergeant Lindsay decided that the circumstances warranted a chokeslam.[10]

\*  \*  \*

At bottom, while I see the video differently than the dissent, I think our disagreement is a reasonable one. The dissent insists Sergeant Lindsay merely reacted to an "assault," while I believe that the video tends to corroborate Spiller's allegation of excessive force—or at minimum confirms there is a material factual dispute. Given our disagreement—a sincere but significant one—I have no heartburn with the notion that the parties' dispute "can go to trial,"[11] a bedrock constitutional guarantee that the dissent seems to fear will materialize. There, in a solemn United States courtroom, the dissent's view, if correct, can be vindicated by a jury of Spiller's and Sergeant Lindsay's peers—not by three appellate judges playing junior-varsity jury.

---

[9] Whether Spiller attempted to punch Sergeant Lindsay is a disputed fact issue, and one that cannot be easily resolved by reference to Deputy Lane's bodycam footage. I therefore cannot say, as the dissent seems to imply, that Spiller's version of events is "blatantly contradicted by the record." *Scott*, 550 U.S. at 380.

[10] In concluding that Sergeant Lindsay's use of force was justified, the dissent also mentions that Spiller was "potentially intoxicated." *Post*, at 19 (JONES J., dissenting). I do not take the dissent to suggest that an officer can chokeslam someone based on the smell of alcohol.

[11] *Id.* at 17.

16

No. 22-20028

EDITH H. JONES, *Circuit Judge*, dissenting:

Sergeant Lindsay arrived at the scene of a traffic accident and got interrupted repeatedly by Spiller, who elbowed him in the ribs, fought with him, and eventually bloodied his lip—and Spiller can go to trial for damages? This is an absurd result on the facts before the panel. Sergeant Lindsay is entitled to qualified immunity on Spiller's excessive force claim. I respectfully dissent from the majority's denial of qualified immunity.[1]

Several critical details are omitted from the majority opinion, as the record and video evidence reveal. From the minute Sergeant Lindsay arrived on the scene, Spiller was interfering with Sergeant Lindsay's investigation of the accident. Spiller spoke over Moore and attempted to answer questions directed at her; Spiller was immediately warned by Sergeant Lindsay not to do this. Lindsay Video at 22:36-38. Sergeant Lindsay detected a "strong odor of alcohol," as he approached Moore and Spiller on the roadside. He mentioned this to the other officers, and asked Deputy Lane "Do you smell that?. . . You need to take a big whiff." Lindsay Video at 23:10-15; Lane Video at 7:45-50. Lindsey also asked Deputy Lane if he had checked Moore and Spiller for driving while intoxicated (DWI).[2] Lindsay Video at 23:08-23:14.

Unsure where the odor was coming from, Sergeant Lindsay told Deputy Lane to separate Moore and Spiller until the officers could move their investigation off the Tollway for safety reasons. Spiller was told that he could follow Moore and Deputy Lane off the Tollway, but that Moore needed

_____

[1] I concur in the remainder of the opinion, which affirms the dismissal of Spiller's other "constitutional" claims.

[2] A search of Spiller's car revealed a large, near-empty bottle of tequila and a red, disposable tumbler on the hood of the car.

to go with Deputy Lane.  Lane Video at 7:54-8:07.  But Spiller insisted on speaking over Sergeant Lindsay and demanded to speak with someone else.  Lane Video at 8:07-8:11.  Then, when Lindsay approached Spiller to say that he was a supervisor and to explain what was happening, Spiller clenched his fist and elbowed Sergeant Lindsay in the chest.  Lane Video at 8:11-14.  Sergeant Lindsay recognized this as an assault, and the physical confrontation between Spiller and Lindsay followed.  Lane Video at 8:14-8:49; Lindsay Video at 23:40-24:11.  Contrary to the majority's view, the video plainly shows Spiller's aggressive elbowing of Sergeant Lindsay.  But even if there were a fact issue as to whether the Sergeant nudged Spiller first, it obviously was not much of a nudge, because it doesn't register on the video at all.  That being the case, Spiller had no right to attack Sergeant Lindsay with his fists.  Even worse, during the confrontation, Spiller punched Sergeant Lindsay in the upper lip and jaw, causing injuries.  This punch left Sergeant Lindsay in pain and disoriented.  As a result, he tumbled to the ground and bloodied his knuckles.  Contrary to the implication in the majority and concurring opinions, Sergeant Lindsay did not tase Spiller; another officer had to do that when Spiller continued fighting a third officer.  Lane Video at 8:28-8:37.

After the melee, the deputies relocated to a nearby Shell station where Sergeant Lindsay was treated by the Houston Fire Department for his injuries: a swollen, bloody lip, a cut, swollen right hand, and pain in his right elbow.  Spiller, for his part, denied being injured and refused treatment.

To this more complete recitation of the facts, I apply the familiar two-step qualified immunity inquiry: "[t]he first question is whether the officer violated a constitutional right.  The second question is whether the right at issue was clearly established at the time of the alleged misconduct . . . . We can decide one question or both."  *Morrow v. Meachum*, 917 F.3d 870, 874

(5th Cir. 2019) (quotation marks and citation omitted).  Spiller bears a heavy burden under the second question, as precedent

> requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances . . . was held to have violated the Constitution. While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate.

*Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (quotation marks and footnotes omitted).  The upshot is that "[q]ualified immunity is justified unless *no* reasonable officer could have acted as [Sergeant Lindsay] did here, or *every* reasonable officer faced with the same facts would *not* have" acted as Sergeant Lindsay did.  *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019) (emphases in original); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper").

The district court correctly concluded that Spiller failed to meet his burden to show it was "clearly established" that his use of force was excessive.  The cases relied on by the majority to suggest that Spiller was subjected to excessive force are not on point.  Lindsay acted lawfully in physically restraining Spiller, who was uncooperative, potentially intoxicated, and actively obstructing investigation, after Spiller elbowed him.

The majority relies on *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) and *Ramirez v. Martinez*, 716 F.3d 369, 378–79 (5th Cir. 2013) to show that, as of 2019, relevant caselaw in this circuit "clearly established" the right

at issue for the present case.[3]  Both are thin reeds, and are applied by the majority at an inappropriately high level of generality.[4]  Principally, neither one involved an injurious assault by the subject of arrest on the law enforcement officer. [5]

*Newman* is thus distinguishable for three reasons.  First, the videotapes in *Newman* did not clearly demonstrate the plaintiff's non-compliance with an officer's commands.  703 F.3d at 762.  Here, the unambiguous video evidence fully "discredit[s]" Spiller's allegations.  *Id.*  Spiller disobeyed instructions from Lindsey, despite repeated warnings.  Second, unlike *Newman*, Deputy Lane's body camera footage clearly shows that the first blow was struck by Spiller when he elbowed Sergeant Lindsay in the chest.  Lane Video at 8:11-14.  In *Newman*, however, the video evidence neither "contradict[ed] nor confirm[ed]" competing accounts of whether Newman had grabbed an officer's hand and refused to let go before being struck with a baton, or whether Newman had been struck with a baton despite never resisting or failing to comply with the officers' commands.  703 F.3d at

---

[3] The Supreme Court, of course, has repeatedly reserved the question whether circuit courts can rely on their own precedents, as opposed to those of the Supreme Court itself, to demonstrate "clearly established law."  *See D.C. v. Wesby*, 583 U.S. 48 , 66 n.8, 138 S. Ct. 577, 591(2018); *Reichle v. Howards*, 566 U.S. 658, 665–66, 132 S. Ct. 2088, 2094 (2012).

[4] Notably, in *Wesby*, the Supreme Court noted that it has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  583 U.S. at 63–64, 137 S. Ct. at 590 (quotation marks omitted).

[5] Nor, for that matter, does *Westfall v. Luna*, 903 F.3d 534 (5th Cir. 2018), which the majority cites for the proposition that "less force is permissible against individuals not yet under arrest."  In that case, the plaintiff was not suspected of being intoxicated, and the plaintiff did not make initial physical contact with the officer.  *Id.* at 539–41.  Thus, that case is readily distinguishable from the facts at issue here as well.

760. Third, this case features an element completely absent in *Newman*: the presence of a strong smell of alcohol coming from Spiller and Moore. There is no basis in *Newman* for finding that Spiller had a "clearly established right" not to be physically restrained by Sergeant Lindsay *after* Spiller elbowed him. *Morrow*, 917 F.3d at 874.

The *Ramirez* case, like *Newman*, involved no strong smell of alcohol as was present here. *See* 716 F.3d at 372–73 (reciting facts). Second, plaintiff Ramirez was shot with a taser right after he became noncompliant and pulled his arm away. In contrast, Sergeant Lindsay engaged Spiller's throat after Spiller had elbowed him. The taser was not deployed by other deputies until substantially later in the incident.

Moreover, the majority agree that "actions such as ma[king] physical contact with any of the officers or physically obstruct[ing] them from performing their legally authorized duties could constitute interference." *Voss v. Goode*, 954 F.3d 234, 239 (5th Cir. 2020) (citation and quotation marks omitted). Spiller "did more than just argue with police officers; he failed to comply with an officer's instruction, made within the scope of the officer's official duty and pertaining to physical conduct rather than speech." *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017). The video evidence shows that Spiller's conduct established probable cause for arrest—before the scuffle commenced. The question here is simply whether Sergeant Lindsay used excessive force to consummate the arrest. Neither this court nor the Supreme Court has authored any case that I know of, or the parties have cited, where the law enforcement officer got injured when confronting a suspect and the suspect himself suffered no injury, yet qualified immunity was denied so that the suspect could sue for damages.

Spiller's claims should not survive the stringent test of "clearly established law," which is intended to protect law enforcement officers from

No. 22-20028

strike suits, especially where insult is piled on injury as happened here. *Morrow*, 917 F.3d at 874. The summary judgment should have been affirmed. I dissent.