[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-10940
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 15, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-81000-CV-WPD

HOWARD HOWELL,
KAREEN HOWELL,

                                                              Plaintiffs-Appellees,

versus

SHERIFF OF PALM BEACH COUNTY,
Ric Bradshaw, et al.,

                                                              Defendants,

MATTHEW WOOD,
JOHN DOUGAN,

                                                              Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 15, 2009)

Before BLACK, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Howard Howell and his wife, Kareen Howell, filed a thirteen-count complaint against six defendants. They brought 42 U.S.C. § 1983 claims alleging violations of their constitutional rights as well as some state law tort claims. Among other things, the Howells claimed that Deputy John Dougan falsely arrested Howard Howell and used excessive force against him by spraying him with a blast of pepper spray. They also claimed that Deputy Matthew Wood falsely arrested Howell and falsely swore in an affidavit that Howell was waving a firearm before he was arrested. The district court denied Dougan and Wood's motion for summary judgment based on qualified immunity. This is their appeal.

I.

Howell has been a Palm Beach County Sheriff's Deputy since 2003. In June 2006 Howell's neighbors, Courtney and Elaine Spence, invited the Howells to a party at their house to celebrate the Spences' son's sixteenth birthday. Howell was off duty that day, and he owned a sound system, so the Spences asked him to provide music for the party. He agreed. Howell and another deputy, Corporal Clinton Cohen, set up the sound system in the patio area in back of the Spences' home. By 11:00 that night, the party had dwindled down to eight to ten adults and

2

two teenagers, and music was still being played.

Around 11:00 the sheriff's office received an anonymous complaint about loud music. Deputies Dougan and Wood responded in separate cars. Elaine Spence met the deputies at the front gate of her house. From that point on, the facts about what happened are in dispute. Taking the facts in the light most favorable to the plaintiffs, as we must do at this stage of the proceedings, see Lee v. Ferraro, 284 F.3d 1188 (11th Cir. 2002), the following events occurred.

Deputies Dougan and Wood went to the patio area in the back of the Spences' home. Dougan approached Howell, who was standing near the sound system and shouted at him, "You need to turn that fucking music off now." Howell responded, "You don't have to talk to me like that. I'm a fucking deputy just like you." Before Howell completed the phrase "just like you," Dougan sprayed Howell in his face with a blast of pepper spray. Howell pulled up his shirt to wipe his eyes, and Dougan turned to walk away. Corporal Cohen, Courtney Spence, and some other guests took Howell into the house to wash his face and irrigate his eyes. Wood asked if he should summon medical assistance, but Howell declined. Cohen, who had served as a training officer for Deputies Wood and Dougan, told them to go their patrol cars and summon their supervisor. Dougan went back to his patrol car, but Wood returned to the Spences' back patio

3

area.

After washing his face, Howell also returned to the patio. He pulled his cell phone from his waistband, intending to call Captain Barnes to inform him about what had happened. Howell commented, "This ain't over with." Wood shouted "gun" and pointed his gun at Howell. Courtney Spence responded, "There's no gun here." Wood holstered his gun and returned to the patrol cars. As he was returning to his car, Wood told Dougan and Cohen that Howell had pulled a gun on him and had threatened to kill Dougan. In sworn statements that they later provided, none of the witnesses stated that they had seen Howell with a gun.

Dougan, Wood, and Cohen returned to the patrol cars, and Dougan called his supervisor, Sergeant Andrew Porath. Porath arrived within a few minutes and was followed by Lieutenant Richard Burdick, Captain Barkdoll, and some deputies. Based on Wood's statement that Howell had threatened him with a firearm, Burdick decided to arrest Howell. Howell was handcuffed and placed in a patrol car. Sergeant Jolly, an internal affairs investigator, asked Howell where his weapons were located, and Howell specifically identified their locations, but no one attempted to verify that information. Two teams of officers searched the Spences' house and found no weapon there. Officers also searched Howell and found a cell phone but no gun. Howell was charged with aggravated assault with

a deadly weapon on a law enforcement officer, resisting an officer without violence, and a noise ordinance infraction. The charges were later dropped.

## II.

The district court found that neither Dougan nor Wood was entitled to qualified immunity. The court concluded that a reasonable officer in Deputy Dougan's position would have known that pepper spraying Howell under the circumstances was a violation of Howell's constitutional rights even without case law precisely on point. It stated that taking "the facts in the light most favorable to Deputy Howell, Deputy Dougan pepper sprayed Deputy Howell for violating a noise ordinance and mouthing off to him when approached about it." R:43 at 13. The court also found that there were genuine issues of material fact about whether Wood actually believed that Howell was holding a firearm and whether Wood had fabricated evidence against Howell.

We review de novo the district court's decision denying qualified immunity to Wood and Dougan and construe the facts in the light most favorable to the plaintiffs. Lee, 284 F.3d at 1190.

## III.

We begin with the threshold issue of whether we have subject matter jurisdiction. Core qualified immunity questions about whether defendants have

5

violated clearly established law are within the scope of our jurisdiction, but we have no jurisdiction to review questions about the sufficiency of the evidence when that is the basis for a district court's decision to deny qualified immunity. See Cottrell v. Caldwell, 85 F.3d 1480, 1484 (11th Cir. 1996). An evidence sufficiency challenge depends on "whether the district court erred in determining that there was an issue of fact for trial about the defendant's actions or inactions which, if they occurred, would violate clearly established law." Id.

Before briefing on the merits in this case, we asked the parties to address the question of jurisdiction. Dougan contends he has raised the legal issue of whether he violated clearly established law when he sprayed Howell with a single blast of pepper spray during the course of Howell's arrest. That constitutes a core qualified immunity issue. See id. (listing examples of legal issues underlying qualified immunity decisions as "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, . . . whether the law clearly proscribed the actions the defendant claims he took"). Therefore, we have jurisdiction over Dougan's appeal.

Wood contends that he had arguable probable cause to arrest Howell

because Howell was waving a firearm.[1]  The district court found that there were disputed material facts about whether Wood believed Howell was waiving a firearm.  If the Wood were raising only the purely factual issue of whether there was a genuine issue of fact about whether he believed Howell was waiving a firearm, we would not have jurisdiction over his appeal.  See Cottrell, 85 F.3d at 1484.  Two other issues Wood is raising, however, are based in part of questions of law, so we do have jurisdiction over his appeal.  See Cottrell, 85 F.3d at 1485 (explaining that we have "interlocutory jurisdiction in qualified immunity cases where the denial is based even in part on a disputed issue of law"). Wood contends that:  (1) Sergeant Porath and Lieutenant Burdick received qualified immunity based on Wood's informing them that Howell had a gun, so there is a legal question about whether Wood should receive qualified immunity too; and (2) the district court found that there was probable cause to believe that Howell was violating the noise ordinance, so Wood was entitled to qualified immunity regardless of his actual belief about whether Howell was waving a firearm.  We

---

[1] "[W]hen the claim is that a search and seizure or arrest violated the Fourth Amendment, qualified immunity depends upon whether arguable probable cause existed.  More specifically, the qualified immunity issue in such cases is not whether probable cause existed, but whether a reasonable officer possessing the information the defendant officer possessed could have believed it did."  Cottrell, 85 F.3d at 1485 n.1.

7

will address Wood's appeal first and then Dougan's.

## IV.

### A. Wood's Issues

Wood contends that because the district court granted summary judgment in favor of his superior officers, who accepted Wood's story that Howell had a firearm, Wood is also entitled to qualified immunity. The district court found that Porath and Burdick accepted Wood's account of the firearm charge in good faith. The court determined there was no evidence that those defendants disbelieved Wood or that they were trying to cover up any wrongdoing related to the pepper spraying. It found no evidence that Porath and Burdick would want to protect Wood and Dougan to the detriment of another deputy, Howell. The court concluded that based on all the facts reasonably available to Porath and Burdick, they had arguable probable cause to arrest Howell.

The district court also found, however, that Howell did not possess a gun and that no witness who would have been in a position to see a gun believed that Howell had one. Courtney Spence, who owned the home where the party was being held, told Wood that no one had a gun. The court found that Wood's actions—holstering his gun and walking away from the patio and back toward the other officers—were inconsistent with Wood actually believing that he had just

8

faced a deadly force encounter with an armed man. There was evidence that Wood did not actually believe Howell had a gun, and the district court found a genuine issue of material fact about whether Wood had lied about it. It reached that conclusion regardless of what Porath and Burdick reasonably believed about what Wood had told them. One can reasonably believe statements that turn out to have been false.

The district court's finding that Porath and Burdick reasonably relied on Wood's statement that Howell had a gun does not establish that Wood had arguable probable cause to arrest Howell for waving a gun. Porath and Burdick did not tell Wood that Howell had a gun, and they did not confirm any suspicions Wood had about whether Howell had one. Instead, it was the other way around. They relied on Wood's statement to them that Howell had a gun.[2] Wood has not established that he is entitled to qualified immunity just because Porath and Burdick are.

_____

[2] Wood argues that "there is a legal question as to whether [he] could rely on his own observations, and another person's observations, in order to find arguable probable cause for his arrest." Br. of Appellants at 19. Wood has not presented evidence that he relied on Porath and Burdick's observations. Instead, all of the evidence was that Porath and Burdick relied on what Wood told them. The district court found: "Here, Sgt. Porath and Lt. Burdick, upon hearing the account of a fellow officer, determined that probable cause existed for an arrest. They did not, after hearing Deputy Wood's account, selectively gather information that would confirm probable cause for an arrest." See R:43 at 23. The district court's finding about the arguable probable cause supporting Porath and Burdick's decision to arrest Howell does not entitle Wood to qualified immunity.

9

In the alternative, Wood contends that, regardless of the gun issue, he had probable cause to arrest Howell based on a violation of the county noise ordinance. Wood correctly observes that "the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." Lee, 284 F.3d at 1195–96 (alteration and quotation marks omitted). Furthermore, "when an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." Id. at 1196 (alteration and quotation marks omitted).

According to Wood, the district court found that he had probable cause to arrest Howell based on a violation of the county noise ordinance. In reality, the district court did not actually find that. Instead, the court stated: "As neither side fully addressed the issue, we only remark that it is likely that Deputy Dougan could have arrested Deputy Howell if there was probable cause that he violated the noise ordinance." R:43 at 13 n.2. First, the district court referred to Dougan and not to Wood. Second, the district court said "if." Third, the district court declined to rule on the issue because the parties had not properly raised it. We will not address on appeal arguments that were not raised in the district court. See Johnson v. United States, 340 F.3d 1219, 1228 n.8 (11th Cir.2003). Therefore, Wood is not

10

entitled to have the district court's denial of qualified immunity reversed on that ground. We express no opinion, however, about whether Wood might be entitled to qualified immunity if he does properly raise and argue this issue before the district court in a new motion for summary judgment.

## B. Dougan's Issues

We now turn to Dougan's appeal. Howell contends that Dougan violated his Fourth Amendment rights by using excessive force against him when he sprayed him with a blast of pepper spray.[3] The amount of force used in a particular situation is judged from the perspective of a reasonable officer on the scene and not "'with the 20/20 vision of hindsight.'" Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871 (1989)). The reasonableness of an officer's use of force is an objective inquiry. See id.

In making that objective inquiry, we "evaluate a number of factors,

---

[3] In his complaint, Howell claimed that Dougan arrested him without probable cause. In his brief to this Court, however, Howell advances only an excessive force claim against Dougan based on the pepper spraying. If Howell has an argument that Dougan arrested him without probable cause, he has waived it. See In re Egidi, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief . . . are deemed waived.").

11

including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Lee, 284 F.3d 1197–98 (quotation marks omitted). Other factors to be considered are the need for the application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted. Id. at 1198. "[T]he force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." Id.

Dougan testified that he saw Howell ball up his fists and take an aggressive stance. Wood also testified that he saw Howell ball up his fists. Howell and some other witnesses, however, testified that Howell took no aggressive action toward Dougan. "[W]e approach the facts from the plaintiff's perspective because the issues appealed here concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law." Id. at 1190 (alteration and quotation marks omitted). At this point in the proceedings, therefore, we must assume that Howell did not take aggressive action toward Dougan.

Dougan was responding to a complaint about loud music, a relatively minor

offense, and his first words to Howell were confrontational. Before Howell finished his verbal response, Dougan sprayed him with pepper spray. The district court determined that any reasonable officer in Dougan's situation would have known that under these circumstances the use of pepper spray was excessive force.

The plaintiffs contend that even if we do not agree that "no reasonable officer could have had a mistaken understanding as to whether the particular amount of force was legal in the circumstances," id. at 1200 (alterations and quotation marks omitted), the law was clearly established that in this situation Dougan's use of pepper spray was gratuitous and constituted an excessive use of force. They argue that (under the facts viewed in their favor) Howell was doing nothing to resist Dougan and that after Dougan sprayed Howell, Dougan simply walked away and allowed Howell to be escorted into the house to have his face and eyes washed. According to the plaintiffs, those facts indicate that Dougan was not attempting to subdue or restrain Howell in order to arrest him. Instead, Dougan's use of pepper spray was entirely unnecessary.

The plaintiffs rely on Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002), in which a sheriff's deputy grabbed an arrestee's arm and sprayed her with pepper spray while she was handcuffed and being transported to jail. We applied the factors to determine if that use of force was excessive and concluded that the

13

factors "weigh[ed] heavily in [the plaintiff's] favor." Id. at 1347. We had this to say about the use of pepper spray:

> Courts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else. Courts have consistently concluded that using pepper spray is reasonable, however, where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital. Furthermore, as a means of imposing force, pepper spray is generally of limited intrusiveness, and it is designed to disable a suspect without causing permanent physical injury. Indeed, pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee.

Id. at 1348 (citations, quotation marks, and footnotes omitted).

In the present case, the crime involved was a minor infraction—violation of a noise ordinance. Taking the facts in the light most favorable to the plaintiffs, Howell responded to Dougan's confrontational tone with an equally brash one, but he was not acting in a physically aggressive manner. No one contends that Howell displayed a weapon at that point, touched Dougan, or even made a move toward him. The fact that Dougan allowed Howell to be taken into the house after spraying him with pepper spray does suggest that Dougan was not attempting to subdue Howell, to stop him from resisting arrest, or to prevent him from fleeing. Dougan told Howell to turn the music down but did not require Howell to

14

physically submit to police authority or even request that he do so. Under the circumstances, Vinyard provided "materially similar facts or facts that gave a reasonable police officer in [Deputy Dougan's] situation fair and clear warning that the conduct here, especially the use of pepper spray, violated the Constitution." Id. at 1355. Although the use of pepper spray is often "a very reasonable alternative to escalating a physical struggle with an arrestee," id. at 1348, the district court did not err in concluding that there was a genuine issue of material fact about whether that use of force was excessive under the particular facts the plaintiffs alleged in this case. Therefore, at this point in the proceedings, Dougan is not entitled to qualified immunity.

**AFFIRMED.**