# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 14, 2025

Lyle W. Cayce
Clerk

No. 24-50975

RONALD SMITH,

*Plaintiff—Appellee*,

*versus*

HUNTER SAENZ; JIMMY GONZALEZ,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:23-CV-881

_____

Before JONES, GRAVES[*], *Circuit Judges,* and RODRIGUEZ, *District Judge*.[†]

PER CURIAM:[‡]

After a foot chase through private property and along a state highway, Deputy Saenz used a non-lethal pepperball to subdue Smith and, with

_____

[*] Judge Graves concurs in the judgment only.

[†] District Judge of the Southern District of Texas, sitting by designation.

[‡] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 24-50975

Deputy Gonzalez, placed Smith in handcuffs. The district court denied Saenz's and Gonzalez's motions for summary judgment on qualified immunity grounds. Because Saenz's and Gonzalez's conduct was not a clearly established violation of Smith's Constitutional rights, we REVERSE.

## I. Background

On June 27, 2021, Plaintiff-Appellee Ronald Smith was running and walking on a public easement along Highway 46 in Guadalupe County, Texas. Defendant-Appellant Deputy Saenz observed Smith on the side of the highway while on patrol and turned around to "check on" him. According to Saenz's Offense Report, Smith "quickly got up and began to walk towards the fence line," and "jumped a barbed wire fence and began running into a field" away from Saenz and onto private property. Based on his experience as an officer, Saenz believed that Smith was "attempting to avoid contact with law enforcement" or was about to commit a crime by trespassing." As the district court observed, the "record contains uncontroverted evidence that Smith fled from Deputy Saenz . . . and that Smith knew [] Saenz was a law enforcement officer at the time," and Saenz's body camera footage clearly shows Saenz in pursuit while yelling for Smith to stop.

Eventually, Smith stopped running and sat on the shoulder beside Highway 46. Saenz approached Smith on foot at approximately the same time Defendant–Appellant Deputy Gonzalez arrived in his vehicle. Smith, claiming that he was "terrified and frozen with fear," dialed 911. Gonzalez and Saenz drew their firearms, and Saenz repeatedly directed Smith to put his hands up and to show the officers his hands. Smith did not respond. Saenz then holstered his firearm and drew his pepperball gun, while also directing Gonzalez to "go less lethal."

2

Saenz and Gonzalez repeatedly directed Smith to lie on his stomach on the ground. Smith, still on the phone with the 911 operator and in a heightened emotional state, remained seated and told both Deputies to "hold on." After a final warning that if he did not lie on his stomach he would be "hit" with a pepperball, Saenz fired his pepperball gun, striking Smith on the left side of his head. Saenz again directed Smith to lie down multiple times, and Smith remained in the seated position and "scream[ed]" into his phone that people were shooting at him. This continued for roughly thirty seconds until Deputies Saenz and Gonzalez approached Smith and placed him in handcuffs. While being handcuffed, Smith complained that he could not breathe and requested an ambulance. Smith refused to engage with EMS when they arrived, however, and was taken to a nearby hospital for evaluation before being transported to Guadalupe County Jail.

On August 7, 2023, Smith filed his First Amended Original Complaint.[1] The district court granted summary judgment to all defendants and claims, excepting Smith's 42 U.S.C. § 1983 excessive force claim against Saenz and Gonzalez. Saenz and Gonzalez timely appealed.

## II. Standard of Review

"Once a government official asserts [qualified immunity], the burden shifts to the plaintiff to 'rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct.'" *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019) (quoting *Gates v. Tex. Dep't of Prot've & Reg'y Servs.*, 537 F.3d 404, 419 (5th Cir.

---

[1] Smith's complaint alleged Fourth Amendment deadly force, excessive force, false arrest, malicious prosecution, and supervisory liability claims as well as violations of the Americans with Disabilities Act and Rehabilitation Act against Deputy Saenz, Deputy Gonzales, Deputy Robert Locker, and Guadalupe County.

2008)).  "Where, as here, the district court finds that genuinely disputed, material fact issues preclude a qualified immunity determination, this court can review only their materiality, not their genuineness."  *Manis v. Lawson*, 585 F.3d 839, 842 (5th Cir. 2009).  However, "[w]hether there are material issues of fact is reviewed *de novo*."  *Id.* at 843.  Finally, while "we review the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," we will not accept "a plaintiff's version of the facts . . . for purposes of qualified immunity when it is blatantly contradicted and utterly discredited by video recordings."  *Hanks v. Rogers*, 853 F.3d 738, 743–4 (5th Cir. 2017) (internal quotations omitted).

## III. Discussion

To overcome Appellants' assertion of qualified immunity, Smith must establish issues of material fact on two points.  *Baldwin v. Dorsey*, 964 F.3d 300, 325 (5th Cir. 2020).  Smith "must adduce facts to show that [Appellants] violated [his] constitutional rights, and [he] must show that 'the asserted right was clearly established at the time of the alleged misconduct.'"  *Id.* (quoting *Cleveland v. Bell*, 938 F.3d 672, 675–76 (5th Cir. 2019)).  "A court may consider either condition first, and if either condition does not obtain, then [Appellants are] immune."  *Id.* at 326.  A right is "clearly established" when its "contours" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3037 (1987).

### A.

To establish a claim of excessive force under the Fourth Amendment, Smith must show "(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."  *Ontiveros v. City of Rosenburg*, 564 F.3d 379, 382 (5th Cir. 2009) (citation omitted).  "Determining whether the force used was

clearly excessive and clearly unreasonable 'requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Anderson v. Estrada*, 2025 WL 1672233, at *4 (5th Cir. Jun. 13, 2025) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight," *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S. Ct. 2466, 2473 (2015), considering the "totality of the circumstances." *Barnes v. Felix*, 145 S. Ct. 1353, 1357–58 (2025).

Smith alleges that Appellants used excessive force in violation of his Fourth Amendment rights when Saenz "brandish[ed] and pointed a pepperball gun at [Smith]," and "fired the weapon, striking [Smith] in the head." Additionally, Smith alleges that both Saenz and Gonzalez used excessive force by "jumping on his back," causing Smith's "face to impact the ground."[2] The district court determined that Smith suffered a cognizable injury resulting from Saenz's and Gonzalez's brandishing of their firearms and Saenz's use of the pepperball gun, resulting in "migraines and psychological injuries in the weeks, months, and years after the incident," which were "not directly contradicted by the proffered video footage or other evidence." Proceeding to the reasonableness inquiry, the court then

---

[2] On appeal, Smith dedicates a portion of his brief to arguing that Saenz's and Gonzalez's brandishing their firearms constituted "deadly force" in violation of the Fourth Amendment and that there was no lawful basis for Saenz and Gonzalez to stop him in the first place. Because the only issue before us is the district court's denial of qualified immunity on Smith's excessive force claim, we do not address these arguments.

determined that "[a] jury could readily conclude from the video evidence . . . that the force used . . . was clearly excessive."

We need not address whether the officers' force was reasonable because the district court erred by considering the "clearly established" prong at far too high a level of generality. Rather than simply determining that a jury *could* readily conclude that the use force was excessive, Smith must "show the violation of a constitutional right *and* that 'the right at issue was "clearly established" at the time of [the] alleged misconduct.'" *Boyd v. McNamara*, 74 F.4th 662, 667 (5th Cir. 2023) (quoting *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019)) (emphasis added).

"A right is clearly established only if relevant precedent 'ha[s] placed the . . . constitutional question beyond debate." *Morrow*, 917 F.3d at 874 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011). Indeed, "qualified immunity is inappropriate only where the officer had 'fair notice'—'in light of the specific context of the case, not as a broad general proposition'—that his *particular* conduct was unlawful." *Id.* at 875 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599 (2004) (per curiam)). This is especially true in excessive-force cases, where "police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts as issue." *Kisela v. Hughes*, 584 U.S. 100, 104, 138 S. Ct. 1148, 1153 (2018) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13, 136 S. Ct. 305, 309 (2015)).

In his brief, Smith provides a litany of cases that purportedly put Saenz and Gonzalez on notice that their conduct constituted a constitutional violation. The cases are inapposite in their facts, issues raised, or both, and

No. 24-50975

certainly do not "place[] . . . the constitutional question beyond debate."[3] *Morrow*, 917 F.3d at 874. The district court, while neglecting to say so

---

[3] The cases Smith cites from this Circuit are not on point factually. *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2018) (finding excessive force where officers slammed a handcuffed plaintiff's face into a vehicle with enough force to break teeth); *Sam v. Richard*, 887 F.3d 710, 714 (5th Cir. 2018) (suspect was fully compliant with officers' orders, lying face down with his hands on his head, and did not flee); *Alexander v. City of Round Rock*, 854 F.2d 298, 309 (5th Cir. 2017) (reversing the dismissal of an excessive force claim where officers threw the plaintiff, who "pose[d] no flight risk," to the ground, kneed him in the back, and pushed his face into the concrete); *Newman v. Guedry*, 703 F.3d 757, 760 (5th Cir. 2012) (finding excessive force where the plaintiff was struck with a baton thirteen times and tased three times during a nonviolent traffic stop); *Hanks v. Rogers*, 853 F.3d 738, 743, 746 (5th Cir. 2017) (denying qualified immunity at summary judgment where an officer "administered a blow to [plaintiff's] upper back or neck" during a traffic stop, where plaintiff had made "no attempt to flee").

Smith's out of Circuit cases are likewise factually distinct and are not clearly established law in this court such that Smith and Saenz would have "fair notice that [their] conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599 (2004); *see* Fogarty *v. Gallegos*, 523 F.3d 1147, 1152 (10th Cir. 2008) (finding the combined use of tear gas, pepperballs, and "dragg[ing] [the plaintiff] down the street" excessive when dispersing protesters); *Duran v. Town of Cicero*, 653 F.3d 632 (7th Cir. 2011) (appealing the denial of a Rule 59(e) motion and cross-appeals regarding evidence-spoilation and admittance); *Headwaters Forest Def. v. County of Humboldt*, 276 F.3d 1125, 1129–30 (9th Cir. 2002) (officers who authorized repeated use of pepper spray against stationary protesters were not entitled to qualified immunity); *Young v. County of Los Angeles*, 655 F.3d 1156, 1160 (9th Cir. 2011) (denying qualified immunity where officer used pepper spray and repeatedly struck the plaintiff from behind with a baton during a nonviolent traffic stop); *Howell v. Sheriff of Palm Beach County*, 349 F. App'x 399, 404–06 (11th Cir. 2009) (finding excessive force where officer used pepper spray on a non-violent and stationary suspect while responding to a noise complaint); *Asociacion De Periodistas De Puerto Rico v. Mueller*, 680 F.3d 70 (1st Cir. 2012) (granting qualified immunity to FBI agent's use of pepper spray); *Duran v. Sirgedas*, 240 F. App'x 104, 108–10 (7th Cir. 2007) (discussing use of pepper spray inside a house when suspects were "confined inside"); *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002) (noting that "using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, [and] is secured . . ."); *Duran v. United Tactical Sys.*, 586 F. Supp. 3d 1106 (D. N.M. 2022) (products liability and negligence claim against PepperBall manufacturer); *Abay v. City of Denver*, 445 F. Supp. 3d 1286, 1291–92 (D. Col. 2020) (discussing use of rubber bullets and tears gas against protesters, "specifically aimed at heads and groins"); *Keup v. Sarpy County*, 709 F. Supp. 3d 770, 796

directly, seems to have identified two authorities from this court that "clearly established" a violation of Smith's Constitutional rights under these facts. We disagree.

First, the district court cited *Boyd v. McNamara* to establish that officers cannot use a taser on a "non-threatening, compliant subject." 74 F.4th at 668. In *Boyd*, an officer first tased and then drive stunned a pretrial detainee in the detainee's cell at the McLennan County jail. *Id.* at 664. The detainee was facing away from the officer with his hands behind his back, waiting to be secured in handcuffs as the officer had instructed. *Id.* In this context, we concluded that our precedents "conclusively establish that the use of a taser on a non-threatening and cooperative subject is an unconstitutionally excessive use of force." *Id.* at 663.

The district court's reliance on *Boyd* is misplaced. First, *Boyd* was decided in 2023, and could not have put the Saenz and Gonzalez on notice of any "clearly established" constitutional violations in 2021. Second, the plaintiff in *Boyd* was tased and drive stunned inside his cell after complying with all of the officer's verbal instructions, turning his back towards the officer with his hands ready to be handcuffed. Smith, by contrast, made no attempts to comply with Saenz's and Gonzalez's repeated and consistent directives to "lay [sic] down," even after Saenz warned Smith that he would use his pepperball gun. Considering the preceding foot chase and Smith's non-compliance, *Boyd* does not "clearly establish" that the use of a pepperball gun violated Smith's Constitutional rights.

Second, the district court cited *Trammel v. Fruge* for the proposition that "[w]here an individual's conduct amounts to mere 'passive resistance,'

---

(D. Neb. 2023) (holding that the officer was entitled to qualified immunity for the use of pepperballs to disperse protesters).

use of force is not justified." 868 F.3d 332, 341 (5th Cir. 2017). On the contrary, "this court's cases 'do[] not establish that when mere passive resistance is at issue, officers are precluded from using any force, but instead that the amount of reasonable force varies.'" *Anderson*, 2025 WL 1672233, at \*7 (quoting *Robles v. Ciarletta*, 797 F. App'x 821, 828 (5th Cir. 2019)). Smith's flight from the officers while Saenz can be heard yelling, "stop, Sherriff's office," is readily distinguishable from *Trammel*, where there was no indication that the plaintiff "was attempting, or intended, to flee the scene." 868 F.3d at 341. In addition, *Trammel* involved a "headlock" takedown by three officers and multiple knee strikes to the "arms, thighs, and ribs" that resulted in displaced and fractured vertebrae. *Id*. at 337–38. *Trammel* involved neither similar resistance nor similar force, and in no way does it "squarely govern[] the specific facts at issue" here nor place the constitutional question "beyond debate." *Kisela*, 584 U.S. at 104, 138 S. Ct. at 1153 (quotation omitted).

Finally, Smith's arguments that Saenz and Gonzalez used excessive physical force by "vigorously shov[ing] Smith to the ground face-first, and "leap[ing] on his back" are simply incompatible with the video evidence. Saenz and Gonzalez approached Smith while he was sitting cross-legged on the grass. Saenz and Gonzalez first pushed Smith's shoulders forward and down to bring Smith's arms behind his back. At this point, Smith was still seated cross-legged, with his upper body bent forward. Gonzalez then put his knee on the outside of Smith's right arm while Saenz placed the handcuffs. As soon as the handcuffs were secured, Gonzalez and Saenz released Smith and Saenz helped Smith into an upright seated position. Consequently, Smith has not met his burden to show that any violation of his constitutional rights would be "clearly established." Smith once again identifies no "controlling precedent that renders it beyond debate—such that any reasonable officer would know" that Saenz's and Gonzalez's

conduct violated the Fourth Amendment. *Morrow*, 917 F.3d at 876–77 (quotation omitted).

The judgment of the district court is REVERSED.